Jose R. E. **MARTINEZ** et al.,
Plaintiffs-Appellants,

v.

Elliot L. **RICHARDSON**, Individually and as the Secretary of the United States Department of Health, Education and Welfare, et al., Defendants-Appellees.

No. 72–1426.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 13, 1972.

Decided Jan. 29, 1973.

Patricia A. Butler, National Health and Environmental Law Program (Earl Wylie Potter, Santa Fe, N. M., and Cyrus E. Frank, National Health and Environmental Law Program, on the brief) for plaintiffs-appellants.

Thomas G. Wilson, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., Victor R. Ortega, U. S. Atty., and Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendants-appellees.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this action, as originally filed, the plaintiffs, now the appellants, sought injunctive and other relief against the Secretary of Health, Education and Welfare, together with the Social Security Administrator and the New Mexico Blue Cross. The object of the action was to prevent the defendants-appellees from terminating certain home health care benefits which are provided to the elderly under the Medicare program.[1] Additional relief sought was an injunction against the defendants to prevent their recouping benefits paid while the administrative proceedings were pending. Plaintiffs complain particularly about the termination of benefits without a prior hearing, alleging that this action violates the Fifth Amendment to the Constitution of the United States. Similarly, the effort to recoup benefits paid is alleged to violate both the Fifth Amendment and the Social Security Act.

The District Court accepted jurisdiction of the case pursuant to 28 U.S.C. §§ 1331 and 1361. It granted a temporary restraining order, and after a final hearing held that procedural due process of law required an evidentiary hearing as a prerequisite to termination of benefits. The court also ruled out a class action under Rule 23(a) and (b)(2). The trial court adjudged that the plaintiff Martinez was entitled to have an evidentiary hearing on his eligibility and was entitled to a continuation of benefits pending the outcome of the hearing.

As to the plaintiffs Baca and Aguilar, the court found that benefits had been restored to them and accordingly the temporary restraining order was dissolved as to them.

As to defendant Manzanares, it was determined that he was then in a nursing home and was no longer requesting home benefits.

The relief which was granted to Martinez was set forth in a Memorandum Opinion and Order which was issued on December 20, 1971. However, the final judgment in the case was not entered until February 1972, and as of that date the court determined that the benefits to Martinez had been terminated because his health had substantially improved, whereby he was not claiming benefits at

---

1. Title XVIII of the Social Security Act of 1965, also known as the Health Insurance for the Aged Act, but more commonly known as the Medicare Act, 42 U.S.C. § 1395 et seq.

the time. The court dismissed the complaint and the cause of action with prejudice, but subject to the provision of paragraph 6 of the Memorandum Opinion and Order entered December 20, 1971.[2]

In paragraph 6 of the court's Memorandum Opinion it is noted that Baca and Aguilar were given the right to the relief granted to Martinez, that is to a hearing, if their benefits were again terminated without an evidentiary hearing as to their eligibility. Thus, as to them, the dismissal of the cause appears to be subject to reopening at the behest of Baca and Aguilar if such relief should become necessary.

It is apparent from the above that very little remains in the case to be reviewed.

We put to one side, temporarily at least, a discussion of the issues presented on this review in order to briefly describe the provisions of Title XVIII of the Social Security Act under which these arise.

This is an Act of 1965 to protect individuals 65 years of age and over from the high cost and the hardship of illness. Part A is a program of hospital insurance. It has a trust fund, the source of which is taxes paid by the employees, employers and self-employed persons. The benefits available under Part A include hospital coverage and a variety of post-hospital home health care services.[3]

Eligibility exists by reason of the certificate of the physician of the beneficiary as to need for the service. There must be a plan presented so that a home health care agency can provide the service. Skilled nursing services are limited to 100 visits per year per one continuous illness.

Part B creates a supplementary medical insurance for the aged. The beneficiaries enroll voluntarily in the program and pay monthly premiums which are matched by federal contributions and form a trust fund. It provides coverage in areas where Part A does not, but the types of services are the same.[4] As in Part A, home care services are limited to 100 visits per year. 42 U.S.C. § 1395m.

Under both Parts A and B the Secretary of Health, Education and Welfare is authorized to make agreements with home health agencies (known as providers of services). These agencies furnish the needed services and then are reimbursed. Actual payment to the provider of the services is through an organization like Blue Cross which is called an intermediary. This intermediary determines the amount due to the provider and makes payment accordingly. It thus acts as a field service for the Secretary.

The Secretary has, under Title XVIII, authority to promulgate regulations governing eligibility, and under the Act individuals dissatisfied with any determination may appeal.[5] The Secretary has

---

2. The complete text of paragraph 6 reads:
 6. Home health care services have been restored to plaintiffs Baca and Aguilar pursuant to a re-evaluation of their claims. As to these plaintiffs, the preliminary restraining order is dissolved. However, in the event that defendants should again terminate their home health care services without an evidentiary hearing as to their eligibility, the relief afforded plaintiff Martinez in this order will apply equally to plaintiffs Baca, Aguilar and to plaintiff Manzanares, if his physician recommends home health care in the event of his discharge from the nursing home.

3. 42 U.S.C. § 1395x(m).

4. 42 U.S.C. § 1395l(a).

5. 42 U.S.C. § 1395ff provides in part:
 (a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.
 (b) Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary to the same extent as is pro-

set up procedures for appeal in the regulations.[6]

To appeal a ruling under Part A the claimant files a request for reconsideration with the intermediary who reviews the record and then forwards it to the Social Security Administration for further review. The latter notifies the claimant as to its decision. If the claim involves entitlement or benefits of $100.-00 or more, the claimant may request a hearing before a Social Security hearing examiner followed by a review before the Appeals Council of the department. Where the claim involves entitlement or benefits of $1,000 or more, the claimant may seek judicial review of the Secretary's final decision.

The review under Part B is much more limited. The dissatisfied claimant files a request for reconsideration directed to the intermediary. Following its determination, a claimant may request a hearing before a hearing examiner designated by the intermediary. There is no special provision for administrative or judicial review of that determination.

The four named plaintiffs were elderly and suffered from a variety of medical conditions.[7] All had been appropriately certified by their physicians as

needing home health care services. Family Services, Inc., certified as a Home Health Care Agency under the requirements of Title XVIII, provided the various home care services needed by the plaintiffs. Defendant Blue Cross Association of New Mexico, intermediary acting for the Secretary, notified the provider that each plaintiff was ineligible for home care benefits and therefore the provider would not be reimbursed for further services.[8] Following this notice, Family Services, Inc. ceased to provide services to the plaintiffs. Thereafter, the plaintiffs individually filed requests for reconsideration. Those requests were pending when the lawsuit was instituted.[9] Benefits were restored to the plaintiffs, except Martinez, during the pendency of the lawsuit.

## I.

## JURISDICTION OF THE DISTRICT COURT

The trial court ruled that its jurisdiction arose under 28 U.S.C. §§ 1331 and 1361 and 5 U.S.C. § 701. The court did not elaborate as to the adequacy of the facts establishing jurisdiction because the defendants did not challenge it. Appellees raise it in this court for the first time. Hence, for this reason and be-

---

vided in section 405(b) of this title, and, in the case of a determination as to entitlement or as to amount of benefits where the amount in controversy is $1,000 or more, to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

6. 20 C.F.R. § 422.201 et seq. for Part A; 20 C.F.R. § 405.807 et seq. for Part B.

7. Aguilar was 83 years old and suffered from severe osteo arthritis, pernicious anemia, diabetes and severe hypertension. Baca was 75 years old and had suffered intractable cardiac failure. Martinez was 83 years old and suffered from chronic lung disease, pneumonia and cardiac failure. Manzanares was 74 years old and suffered from inflamed nerves.

8. Aguilar had received benefits under Part B since the program was started in 1966. These benefits were terminated after September 30, 1970. Manzanares had re-

ceived benefits under Part B since March 18, 1971, and these were terminated after April 20, 1971. Baca had received benefits under Part A since December 14, 1970, and these were terminated after February 15, 1971. Martinez had received benefits under Part A since February 26, 1971, and these were terminated after March 12, 1971.

9. On this appeal the defendants-appellees have not raised any argument contending that the plaintiffs had failed to exhaust their administrative remedies before instituting a lawsuit. But compare Huseman v. Finch, 424 F.2d 1237 (10th Cir. 1970), where the failure to exhaust administrative remedies was raised and this court upheld a trial court's dismissal for lack of jurisdiction where a Social Security claimant's request for reconsideration was pending when he brought suit. See also Parker v. United States, 448 F. 2d 793, 798 (10th Cir. 1971).

cause jurisdiction appears to be present, we are reluctant to follow out the appellees' requests that we take judicial notice of facts designed to destroy jurisdiction, especially since the factual assertions are doubtful.

Appellees challenge jurisdiction from the standpoint of jurisdictional amount under 28 U.S.C. § 1331 and also as to the basic authority of the court to entertain the suit in view of the administrative remedies which are noted above.

▮▮ It is, of course, axiomatic that a litigant must exhaust his administrative remedies, if such remedies exist, as a prerequisite to invoking the jurisdiction of the federal court. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). But this requirement of exhaustion is not invariable where, for example, the administrative remedy is wholly inadequate and the federal question is so plain that exhaustion is excused.[10]

As previously noted, the action which was taken against the plaintiffs here involves violation of rights guaranteed by the Fifth Amendment to the Constitution of the United States, and it cannot be doubted that the federal question is a substantial one. It would also appear from the record before us that the administrative remedy is grossly inadequate for the particular purpose. It may be possible through the administrative route to correct this practice of termination without a hearing, but it would be a long and tedious process, and by the time these elderly and infirm plaintiffs followed out this remedy they might be no longer with us. In view of these circumstances, we are of the opinion that the remedy was inadequate.

▮▮ As to the requirement that the amount in controversy was, to a legal certainty, less than $10,000, we are of the opinion that we cannot take judicial notice of the facts which we would have to notice in order to rule the case out on this ground. Undoubtedly the assertion was made in good faith and in any event it need not be absolutely certain. See Aetna Cas. & Sur. Co. v. Flowers, 330 U.S. 464, 467, 67 S.Ct. 798, 91 L.Ed. 1024 (1947); Friedman v. Int'l Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F. 2d 808, 810, cert. denied, 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955); 1 Moore's Federal Practice § 0.92(5), at 845; 1 Barron & Holtzoff, Federal Practice and Procedure (Wright ed.) § 24, at 108. How can it be said with a degree of legal certainty that less than $10,000 is at issue in this controversy what with the astronomical costs of medical services and the particularly high cost of home medical service, if indeed such service can be obtained.[11]

▮ An additional reason exists for upholding jurisdiction and that is that relief in the nature of mandamus is here sought and such relief proceeds under § 1361, *supra,* in which jurisdictional amount is not an element. This section recognizes that in suits against federal officers asserting constitutional

---

10. Greene v. United States, 376 U.S. 149, 163, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); 3 Davis Administrative Law Treatise § 20.07. Nor will exhaustion of administrative remedies be required where it would result in irreparable harm. This is especially true where time is crucial to the protection of substantive rights and administrative remedies would involve delay. See Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 591–592, 46 S.Ct. 408, 70 L. Ed. 747 (1926); Banton v. Belt Line Ry. Corp., 268 U.S. 413, 416–417, 45 S.Ct.

534, 69 L.Ed. 1020 (1925); 3 Davis, *supra,* § 20.01 at 56.

11. *See* St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); City of Boulder v. Snyder, 396 F.2d 853 (10th Cir. 1968); F & S Constr. Co. v. Jensen, 337 F.2d 160 (10th Cir. 1964). *See also* Cortright v. Resor, 325 F.Supp. 797 (E.D.N.Y.), rev'd on the merits, 447 F.2d 245 (2d Cir. 1971); *Compare* Bass v. Rockefeller, 331 F.Supp. 945, 952 n. 6 (S.D.N.Y. 1971).

rights the pecuniary value of the case is not germane.[12]

## II.

### THE FINAL JUDGMENT

 As we have noted, the trial court's judgment is ambiguous in that it dismisses the complaint with prejudice, but at the same time it extends certain positive relief to the plaintiffs Baca and Aguilar. On remand this judgment must be clarified by eliminating the dismissal with prejudice and by directing that the file remain open at least for the purpose of remedying the problems of Baca and Aguilar should they arise in the future. As we view it, the court correctly appraised the holding and the effect of the Supreme Court's decision in Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970).

 Undoubtedly the court was within its rights in dismissing the claim of Martinez inasmuch as Martinez had improved health and was no longer eligible for the benefits in question.[13] It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal of the Martinez claim must be without prejudice.[14]

Overall, it appears that the trial court intended to retain jurisdiction over the claims of Baca and Aguilar, and therefore clarification of this order is necessary following remand.

## III.

### THE CLASS ACTION QUESTION

In dismissing the class action the trial court did not specify any reason. It will be recalled that plaintiffs had sought to represent a class composed of all persons presently receiving, and all persons who in the future would become eligible to receive, home health care benefits. As it turned out, however, there were only 87 persons who in a realistic sense were affected. Hence, the court might have dismissed the class action because of the lack of requisite numerosity.

 In this connection we point out that the considerations are somewhat different in a Rule 23(a) and (b)(2) situation. This particular provision of Rule 23, involving as it does injunctive relief on behalf of persons affected, does not call for the elaborate procedure re-

---

12. *See* Noyd v. McNamara, 378 F.2d 538 (10th Cir.), cert. denied, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir.), cert. denied, 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67 (1966).

Mandamus is an appropriate writ for the purpose of compelling an administrative office or agency to perform a duty required by the Constitution. *See* Walker v. Blackwell, 360 F.2d 66, 67 (5th Cir. 1966); Ashe v. McNamara, 355 F.2d 277, 282 (1st Cir. 1966). *See also* McQueary v. Laird, 449 F.2d 608, 611 (10th Cir. 1971), wherein it was said:

If a federal officer does or attempts to do acts which are in excess of his authority or under authority not validly conferred, equity has jurisdiction to restrain him.

13. *See* Myers v. Polk Miller Products Corp., 201 F.2d 373, 376–377, 40 CCPA 739 (1953); *see also* Link v. Wabash R. Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) and Walling v. Shenandoah-Dives Mining Co., 134 F. 2d 395, 396–397 (10th Cir. 1943) (Judge Murrah dissenting).

14. *See* Costello v. United States, 365 U.S. 265, 384–388, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Saylor v. Lindsley, 391 F. 2d 965, 968–969, 5 A.L.R.Fed. 885 (2d Cir. 1968); Simmons v. Whitaker, 252 F.2d 224, 231 (5th Cir. 1958); Smith v. Ford Gum & Machine Co., 212 F.2d 581, 583 (5th Cir. 1954); Warren for Use and Benefit of Walker v. Pearson, 195 F.2d 300, 301 (5th Cir. 1952). The last sentence of Rule 41(b) of the Federal Rules of Civil Procedure appears to recognize this general rule when it states:

Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction*, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. (Emphasis added.)

quired in a (c)(2) action. Hence, Rule 23(b)(2) offered a possible remedy. But as we view it, a class action was not demanded here because the same relief could be afforded without its use and seemingly the court had something of this kind in mind when it provided in paragraph 6 of its findings for further enforcement action if the same should become necessary. Thus the court was thinking of future compliance and this was, of course, the important problem.

Inasmuch as the case is being remanded for further proceedings, the trial court should fashion an appropriate decree or order so as to make certain that there will be future compliance with the law in order that persons in the dire straits which these plaintiffs were in are not cut off without a hearing.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.