**MOUNTAIN STATES NATURAL GAS CORPORATION, Plaintiff-Appellee,**

v.

**PETROLEUM CORPORATION OF TEXAS, Defendant-Appellant.**

**No. 81–2358.**

United States Court of Appeals, Tenth Circuit.

Dec. 3, 1982.

W. Thomas Kellahin and James B. Grant of Kellahin & Kellahin, Santa Fe, N.M., for plaintiff-appellee.

William F. Carr of Campbell, Byrd & Black, Santa Fe, N.M., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Petroleum Corporation of Texas (Petco) appeals from a decision issued by the district court authorizing Mountain States Natural Gas Corporation (Mountain States) to join in the drilling of a well in New Mexico without penalty and ordering Petco to compensate Mountain States for the amount of risk penalties withheld from production.

Petco is an independent oil company organized under the laws of Texas and authorized to do business in New Mexico. Petco owns the oil and gas interests underlying 120 acres in Rio Arriba County, New Mexico, on which it wanted to drill an oil well. Under the spacing rules promulgated by the

New Mexico Oil Conservation Division,[1] a minimum of 160 acres is necessary to secure a drilling permit. Mountain States owns the oil and gas interests underlying the 40 acres contiguous to Petco's property.

In May 1978, Grady Ware, a Petco employee, telephoned Albert J. Blair, Jr., President of Mountain States, to propose that Mountain States farm out its rights in the contemplated well to Petco. Blair suggested that Ware submit Petco's proposal in writing. On May 11, Ware sent Blair a farm-out agreement, which provided that Mountain States would assign its interest in the well to Petco in exchange for an overriding royalty interest.

Ware received no response from Blair by June 21. He consequently contacted Blair's office. Ware was informed by Blair's secretary that the farm-out agreement had not been received. Ware sent a copy of the farm-out agreement to Blair on June 22. On June 30, Blair telephoned Ware and informed him that he was not interested in Petco's proposal.

On July 19, Ware sent Blair a letter stating that Petco intended to force pool the oil and gas mineral interests on Mountain States' property unless an agreement could be reached with Blair. Blair did not respond to the letter.

On August 29, Petco submitted an application to the New Mexico Oil Conservation Division (Division) seeking to have Mountain States' 40-acre tract forced pooled into a drilling unit.[2] On September 27, the Division conducted a hearing, in which Mountain States did not participate, concerning the mandatory pooling of the oil and gas underlying Mountain States' 40-acre tract. Subsequent to the hearing, the Division issued an order creating a 160 acre oil spacing and proration unit and pooling all the mineral interests, including Mountain States' interests, therein. The order also named Petco as the operator of the well and unit and provided that: "[a]fter the effective date of [the] order and within a mini-

mum of 30 days prior to commencing [the] well, the operator shall furnish ... each known working interest owner ... an itemized schedule of estimated well costs." The order further provided that: "[w]ithin 30 days from the date the schedule of estimated well costs is furnished to him, any non-consenting working interest owner shall have the right to pay his share of estimated well costs to the operator in lieu of paying his share of reasonable well costs out of production...." The order also provided that non-consenting owners were required to pay 200 percent of the reasonable well costs as risk charges.

On October 25, Petco sent Mountain States a certified letter containing a copy of the Division's order and a copy of the estimated well costs. On October 31, without having heard from Mountain States, Petco commenced drilling the well. The well was drilled to its maximum depth by November 17 and was completed on January 10, 1979. On December 12 Petco's letter to Mountain States, containing the well costs and Division order was returned marked "unclaimed". The envelope indicated the post office had placed the letter in Mountain States' post-office box first on November 1 and again on November 11. Despite notification that Mountain States had not been informed of the pooling order, Petco made no other attempts to contact Mountain States.

The first gas sales from the well were made on April 17, 1979. Pursuant to the Division's order, Petco withheld from production Mountain States' share of the well costs plus an additional 200 percent thereof as a penalty for not consenting to pay its share of the well costs.

In a letter dated June 28, 1979 Petco was informed by Mountain States that it had never received notice of the well costs or had an opportunity to elect to pay its share, and thus was asserting its right to join in the drilling of the well without paying a

---

1. See rule 104(II)(a), State of New Mexico Oil Conservation Division, Rules and Regulations.

2. Under NMSA § 70–2–6 the division has jurisdiction and authority over all matters relating to the conservation of oil and gas.

penalty. Petco, nevertheless, continued to withhold Mountain States' costs from production.

On May 23, 1980, Mountain States filed a complaint in the district court seeking an order permitting it to join in the well free of risk penalty because Petco had failed to provide Mountain States with notice of well costs pursuant to the Division's order. Mountain States alleged that as a result of Petco's failure to provide it with notice, Mountain States' right to due process of law had been denied. The complaint was amended on December 12, 1980, to include a prayer for damages for conversion and for an accounting.

On February 4, 1981, the district court dismissed the suit without prejudice so that the issues could be initially considered by the Division.[3] Mountain States filed a motion for reconsideration of the court's dismissal of the suit on February 6, contending that the Division need not consider the action initially inasmuch as the suit sought equitable relief which the Division could not grant and because the central issue was legal. Mountain States contended that the doctrine of primary jurisdiction therefore did not apply. The court granted Mountain States' motion on March 9, and set aside its order of dismissal.

The case was tried before the court on September 22, 1981. The court found that the Division's order requiring Petco to furnish estimated well costs to Mountain States contemplated *actual* notice to Mountain States, and that Petco's attempt to notify Mountain States by means of a certified letter did not satisfy the requirements of the order. Moreover, the court found that Petco's attempted notification on October 25 did not comply with the terms of the Division order inasmuch as notification was not made at least 30 days prior to commencing drilling of the well. Consequently, the court ordered Petco to pay Mountain States the sum it had withheld as a risk penalty from its share of the proceeds of the well,

together with interest thereon at 12 percent per annum.

On appeal Petco contends that: (1) the court erred in ruling that the Division did not have primary jurisdiction over the suit; (2) the court erred in its consideration of Mountain States' due process claim; and (3) the court improperly ruled that Petco had not complied with the 30-day notification requirement inasmuch as that issue was not within the scope of the pleadings.

## I.

Petco contends that the court erred in ruling that the Division did not have primary jurisdiction over the suit.

In *United States v. Western Pacific R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the Supreme Court explained the related doctrines of exhaustion of administrative remedies and primary jurisdiction as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. [Citation omitted].

> 352 U.S. at pp. 63–64, 77 S.Ct. at p. 165.

3. NMSA § 70–2–17 provides that: "In the event of any dispute relative to [the cost of drilling and completing the well], the division

shall determine the proper costs after due notice to interested parties and a hearing thereon."

In *New Mexico Association For Retarded Citizens, et al. v. State of New Mexico, et al.*, 678 F.2d 847 (10th Cir.1982), we recognized that exhaustion of [administrative] remedies and primary jurisdiction are closely connected doctrines. In that case, it was contended that the district court should have stayed its hand until administrative remedies had been exhausted or invoked the doctrine of primary jurisdiction to permit the administrative agency to first complete its investigation into the charges. We observed, *inter alia:*

> Exhaustion requires agency determination of claims initially cognizable exclusively at the administrative level prior to court intervention. *See United States v. Radio Corp.*, 358 U.S. 334, 346 n. 14, 79 S.Ct. 457, 464 n. 14, 3 L.Ed.2d 354 (1959). Primary jurisdiction mandates similar judicial restraint: disputes properly pressed in either the courts or administrative bodies are to be first decided by an agency specifically equipped with expertise to resolve the regulatory issues raised. *Id.* 678 F.2d at p. 850.

The exhaustion doctrine applies where the agency *alone* has exclusive jurisdiction over the case (generally premised on the exercise of the agency's expertise), whereas primary jurisdiction applies where *both* a court and an agency have the legal capacity to deal with the issue.

There are two main principles applicable to the rule that every court requires exhaustion of administrative remedies: "(1) a court will not decide a question [within the agency's specialization and when the administrative remedy will provide the wanted relief] not first presented to an agency; and (2) a court will not decide a constitutional question in a case that the agency might have decided on nonconstitutional grounds." Davis, *Administrative Law Treatise,* 1982 Supp., Ch. 20, § 20.11, p. 281.

However, in *McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) the Supreme Court observed that while the doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law, it is,

like most judicial doctrines, subject to numerous exceptions. Indeed, this court has recognized that "[t]he exhaustion principle is not indiscriminately applied to block judicial action in every circumstance where a litigant has failed to explore his administrative avenues of relief." *New Mexico Association For Retarded Citizens, et al. v. State of New Mexico, et al.*, 678 F.2d at p. 850. Thus, in *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir.1973) we said:

> It is, of course, axiomatic that a litigant must exhaust his administrative remedies, if such remedies exist, as a prerequisite to invoking the jurisdiction of the federal court. But this requirement of exhaustion is not invariable where, for example, the administrative remedy is wholly inadequate and the federal question is so plain that exhaustion is excused. [Citations and footnotes omitted].
>
> *As previously noted, the action which was taken against the plaintiffs here involves violation of rights guaranteed by the Fifth Amendment to the Constitution of the United States, and it cannot be doubted that the federal question is a substantial one.*

472 F.2d at p. 1125. [Emphasis supplied].

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) the question presented was whether a pre-termination hearing was required by due process and whether this issue must, in the first instance, be decided by the agency. The Supreme Court held that the Secretary was not required to consider such a challenge. The converse, of course, is that the challenge may be initially posited with the courts because it involves a constitutional question.

We hold that the court did not err in exercising primary jurisdiction in the case at bar. The crux of Mountain States' claim presented was that Petco violated its federal constitutional right of due process of law. Here, as in *Martinez v. Richardson, supra,* there was a substantial federal question presented.

## II.

Petco's due process contentions are two-fold. First, Mountain States failed to plead or to prove that state action was involved, and thus the issue was improperly before the court. Second, even if due process was properly raised, Petco satisfied its obligations when it sent a letter containing the Division order and well costs to Mountain States.

■ To maintain an action for denial of due process, a party must demonstrate initially that "state action" is involved.[4] No cause of action exists for a dispute between purely private individuals.

■ In this case, Mountain States alleges that Petco denied it due process because Petco neglected to provide notification of well costs as mandated by the Division order. It is not clear from the record what Mountain States' state action contention is. Apparently, Mountain States is maintaining that because notification was required by order of the Division, which is a state agency, state action was involved. Admittedly, however, Mountain States' complaint is not with the Division's order, which it unquestioningly accepts, but rather with Petco's actions seeking compliance with the order.

In *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980) this court, discussing *Torres v. First State Bank of Sierra County,* 588 F.2d 1322 (10th Cir.1978), stated that where a state "does no more than furnish a neutral forum for the resolution of issues and has no interest in the outcome of the lawsuit, the State court's action in issuing an order cannot be imputed to the private party seeking issuance of the order." 620 F.2d at p. 1380. This rationale must extend also to neutral state agencies which, without having an interest in the outcome of the case, merely provide a forum for the resolution of disputes.

The dispute in the present case is between private parties. No state action is contested. Mountain States' contentions are directed solely to Petco, and Petco's actions cannot be said to rise to the level of state action merely because an uncontested state order is involved.

Without considering the "state action" question, the trial court found that the term "furnish" in the Division order required actual notification to Mountain States, and that Petco failed to comply with due process requirements by simply mailing a letter to Mountain States.

■ We decline to consider whether the order and due process require actual notification or whether Petco's attempt to notify by mail, even though not received by Mountain States, was sufficient notification. We need not reach the issue, inasmuch as the court ruled that Petco's attempt to notify Mountain States on October 25, even if received, failed to comply with the Division order requiring that Mountain States be accorded a minimum of 30 days notice before Petco commenced drilling operations. The record shows that the well was commenced on October 31, only six days following the mailing of notification to drill. Petco argues that the court improperly considered the "actual notification" issue because it was outside the scope of the pleadings. Even if this be true, an appellate court may affirm the order of the trial court on any grounds that find support in the record. *Fleming Bldg. Co. v. Northeastern Oklahoma Bldg.,* 532 F.2d 162 (10th Cir.1976); *Keyes v. School District,* 521 F.2d 465 (10th Cir.1975), *cert. denied,* 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976); *Carpenters Dist. Council v. Brady Corp.,* 513 F.2d 1 (10th Cir.1975); *Retail Store Employees v. Sav-On Groceries,* 508 F.2d 500 (10th Cir.1975); *Sanchez v. TWA,* 499 F.2d 1107 (10th Cir.1974); *Pound v. Insurance Co. of N. Am.,* 439 F.2d 1059 (10th Cir.1971). Such is the case here.

The Division order provided that Petco was required to furnish notice to Mountain States "within a minimum of 30 days prior to commencing a well." The language of

---

4. The Fourteenth Amendment to the United States Constitution provides in pertinent part: "Nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

the order is clear. Despite Petco's argument that notification had to be *within* 30 days of drilling, the plain language of the order is that Petco was required to provide Mountain States with at least 30 days notice *before* commencing drilling operations.

We hold that Petco violated the terms of the Division order by failing to furnish Mountain States with notice at least 30 days before commencing the well. Accordingly, Mountain States was not allowed the opportunity accorded by Division's order to elect to pay the costs of drilling.

WE AFFIRM.