**Judy LESKO, et al., Plaintiffs,**

v.

**Otis R. BOWEN, et al., Defendants.**

**No. 85–C–1600.**

United States District Court,
E.D. Wisconsin.

July 16, 1986.

---

Bronson C. La Follette, Atty. Gen., Donald P. Johns, Asst. Atty. Gen., Madison, Wis., for defendant Reivitz.

Patricia DeLessio, Shirin Cabraal, Carol Medaris, Anne L. DeLeo, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

Joseph P. Stadtmueller, U.S. Atty., Barbara B. Berman, Asst. U.S. Atty., Milwaukee, Wis. and Donna Morros Weinstein, Regional Atty., Richard A. Urbin, Asst. Regional Atty., Dept. of Health and Human Services, Chicago, Ill., for defendant Bowen.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

REYNOLDS, Chief Judge.

This is a class action to restore AFDC benefits by enjoining the defendants from including half-siblings' non-AFDC income in the family income of AFDC beneficiaries. The result of that inclusion is to reduce the AFDC benefits available for certain families under the questionable assumption that other funds are available, and/or to require a child with non-AFDC income such as child support, to use his funds to support his half-siblings. For the reasons stated below, plaintiffs' motion for class certification and a preliminary injunction will be granted.

The plaintiffs are mothers and two classes of children: those who seek to have the defendants restore their AFDC payments ("AFDC children"); and those other children, who have money of their own or who are receiving support payments from their fathers either directly or through social security survivor payments ("other children"), and who live with the AFDC children. These reductions came about because the Federal government decided to include the other children's income as part of the "family" income in determining the AFDC eligibility of the mothers and the AFDC children.

This case arises under the laws of the United States. Jurisdiction is conferred by 28 U.S.C. § 1331.

A hearing on the plaintiffs' motions for class certification and for a preliminary injunction was held on January 16, 1986.

## FINDINGS OF FACT

The named plaintiffs are mothers and their children: some of these children receive grants from the Aid to Families with Dependent Children program ("AFDC"), 42 U.S.C. §§ 601 et seq. (hereinafter "AFDC children"), and some of these children receive either child support from their fathers, benefits under Title II of Social Security Act, 42 U.S.C. §§ 301 et seq. ("Title II"), Old Age, Survivor and Disability Insurance, or have their own property. The non-AFDC children will hereinafter be referred to as the "other children."

The mothers and all of the children have asked for class certification and for a preliminary injunction preventing defendants from requiring the mothers to include within their AFDC filing units the "other children," and from withholding AFDC benefits pursuant to defendants' rules and poli-

cies implementing § 2640(a) of the Deficit Reduction Act of 1984 ("DEFRA"), 42 U.S.C. § 602(a)(38); and from assigning child support income to the State of Wisconsin pursuant to this rule and policy.

Defendant Otis R. Bowen, M.D., is the Secretary of the United States Department of Health and Human Services and in that capacity has the duty to administer and promulgate regulations to implement the AFDC program and the Social Security Old-Age, Survivors, and Disability Insurance program 42 U.S.C. §§ 401 *et seq.*

Defendant Linda Reivitz is the Secretary of the State of Wisconsin Department of Health and Social Services and in that capacity is charged with the supervision of the administration of the AFDC program in Wisconsin.

AFDC is a cooperative federal and state program authorized under Title IV of the Social Security Act, 42 U.S.C. §§ 601 *et seq.* The purpose of the program is to provide financial aid to needy children who are deprived of parental support or care by reason of the death, continued absence from the home, unemployment or incapacity of a parent. 42 U.S.C. §§ 606(a) and 607. The State of Wisconsin participates in the AFDC program and has adopted a state disbursement plan in accordance with the requirements of 42 U.S.C. § 602(a).

The federal law under consideration provides that in determining the need of applicants for AFDC the state agency administering the AFDC program must "take into consideration any other income and resources of any child or [cohabitant] relative" of those seeking aid under the AFDC program. 42 U.S.C. § 602(a)(7)(A). All income that is "actually available" to meet the needs of the AFDC applicant child, including any income which such AFDC child "has the legal ability" to make available for his or her support or maintenance, must be counted in determining his eligibility for and the amount of AFDC benefits he will receive. 45 C.F.R. § 233.20(a)(3)(ii)(D). Wisconsin has established, pursuant to the requirements of 42 U.S.C. §§ 651 *et seq.*, the Office of Child Support, which obtains

and enforces child support orders issued by the Wisconsin courts.

Prior to October 1, 1984, AFDC applicants had the option of excluding from the filing unit any family member in the household if the excluded member had no legal duty to support the applicants. Any income or resources that the other children had would not be counted in determining the amount of AFDC benefits granted to the applicants.

Effective October 1, 1984, 42 U.S.C. § 602(a) was amended by § 2640(a) of DEFRA. The amendment requires the states participating in the AFDC program to amend their state plans to provide as follows.

> [I]n making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include:
>
> (A) any parent of such child, and
>
> (B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding sections 405(j) of this title, in the case of benefits provided under subchapter II of this chapter) ...

42 U.S.C. § 602(a)(38).

Pursuant to the statutory amendments made by DEFRA, defendant Secretary Heckler promulgated an interim rule which provides as follows.

> For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:
>
> (A) Any natural or adoptive parent, or step-parent (in the case of States with laws of general applicability); and

(B) Any blood-related or adoptive brother or sister.

Amendments to Part 206, 49 Fed.Reg. 35599 (September 10, 1984), now codified at 45 C.F.R. § 206.10(a)(1)(vii).

On July 1, 1985, defendant Secretary Reivitz issued an AFDC Handbook Release which directs all county social service departments to include within the AFDC group any minor brothers and sisters who are dependent and who live with an AFDC child who is applying for or receiving AFDC unless they fall within one of the enumerated mandatory exclusions. Children who receive either child support or Title II benefits do not fall within the listed exclusions.

Title II of the Social Security Act of 1935, as amended, provides for Old-Age, Survivor, and Disability Insurance benefits to insured workers and their dependents. If a worker is insured within the meaning of the Social Security Act, and then dies, becomes disabled or retires, his dependent children are entitled to receive monthly insurance benefits based on the amount of the insured worker's contribution to the system. 42 U.S.C. §§ 401 *et seq.* These benefits are generally paid to a "representative payee" who has the responsibility to use the benefits solely for the child's use and benefit. 42 U.S.C. § 408(e).

Wisconsin child support law provides that in determining the appropriate amount of child support a court shall consider the financial resources of the child, the parents' ability to pay and the standard of living the child would have enjoyed if the parents were not separated. Wis.Stats. § 767.25(lm). Wisconsin law further provides that parents have a duty to support only their own natural and adoptive children. In this respect Wisconsin child support law differs from Wisconsin law implementing the AFDC program with respect to the methods and aims of determining appropriate support levels for children. "Need" for the purposes of the AFDC program is determined by the state and represents a "minimum subsistence" level. A state's standard of need is used to determine who is eligible for benefits and the amount of an AFDC grant. Wisconsin's current AFDC standard is 85% of what has been determined to be a minimum subsistence level. Wis.Stats. § 49.19(11)(a)(1).

Plaintiff Judy A. Lesko resides in Wisconsin with her two minor children. Her son receives $341 per month in Title II benefits due to the death of his father. Until September 1, 1985, Ms. Lesko received an adjusted AFDC grant of $417 per month. This combined with the Title II benefits amounted to $758 per month. Ms. Lesko is now required to include her son in her family's AFDC filing unit and this has the effect of increasing the size of the unit and, thus, increasing her family's adjusted grant to $508 from $417 per month; but her son's Title II benefits are subtracted from this amount. Thus, beginning September 1, 1985, her AFDC grant was reduced to $167 per month. The monthly income for her family of three has in this way been reduced from $758 to $508. Ms. Lesko's family's monthly expenses are approximately $790.

Plaintiff Shirley Carr, resides in Wisconsin with her two minor daughters and an 18 year old son. Until September 1, 1985, Ms. Carr's family's AFDC grant was $453 per month. One of her minor daughters has received $450 per month for the last 13 years under Title II because her father died. Thus, the family's total monthly income has been $903. In August 1985, Ms. Carr received notice from the Milwaukee County Department of Social Services that beginning September 1, 1985, she would be required to include her Title II daughter in her AFDC filing unit and that her daughter's Title II benefits would be deducted from her AFDC grant. Ms. Carr's AFDC grant now totals $544 per month, but her daughter's $450 per month in Title II benefits are deducted, thus reducing her AFDC grant to $94 per month. Thus, the monthly income for her family of four has gone from $903 down to $544.

Ms. Carr's family's monthly budget includes: $380 for rent, $75 for food beyond her allotment in food stamps, $100–$175 for natural gas, $27 for the telephone, $50

for clothing, $50 for transportation, $25 for laundry and $20 for miscellaneous expenses, for a total monthly budget of approximately $725 to $800. The family's car and washing machine have been repossessed; the family has had to sell their television and some furniture. Ms. Carr is behind in her payments on her gas bill.

Plaintiff Georgia Mason, resides in Wisconsin with her two children. Her son receives $478 per month in Title II benefits due to his father's death. Excluding this son from the AFDC filing unit, Ms. Mason received $488 per month in AFDC benefits, for a family total of $966. Including him in the AFDC unit and deducting his Title II income reduces the AFDC grant to $49 per month. Monthly income for this family of three has, thus, declined from $966 to $527. In the past Ms. Mason regularly used her son's Title II income to pay for treatment of his emotional and behavioral problems.

Plaintiff Margaret Ryan, resides in Wisconsin with her four children. Her two oldest children receive $500 per month in child support payments from their father. Ms. Ryan and her two other children were eligible for an AFDC grant of $544 per month bringing the family's total monthly income to $1,044. Under the new rules the family's AFDC grant over and above child support now amounts to $295, thus reducing the monthly income for this family of five from $1,044 to $795 per month. In the past Ms. Ryan has regularly used her elder children's child support income to pay for treatment of their progressive hearing loss.

During the last five months of 1985, (since the defendants have implemented 42 U.S.C. § 602(a)(38)) over 3,500 families with one or more child receiving child support or Title II payments have begun to receive AFDC benefits in Wisconsin. These families have had or will have their AFDC benefits reduced because of the inclusion of the "other children's" income in the AFDC filing unit.

## CONCLUSIONS OF LAW

### I. CLASS CERTIFICATION

Plaintiffs have moved for certification of a class action pursuant to Fed.R. Civ.P. 23 and this motion will be granted, because: the defendants' rule and policy are applicable to the entire class; the class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to class members; the claims of the plaintiffs are typical of the claims of the members of the class as a whole; and the plaintiffs will fairly and more than adequately protect the interests of the class. Thus, plaintiffs have met the requirements of Rule 23.

Defendants argue that because identical relief can be afforded without class certification, certification is unnecessary in this case. *Martinez v. Richardson*, 472 F.2d 1121, 1127 (10th Cir.1973). However, because members of the class may be entitled to individual notification of the Court's judgment, and because such relief cannot be granted unless the class is certified, the Court will certify the class.

### II. PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The test for whether a district court should grant a preliminary injunction requires the Court to consider four factors.

> (1) [W]hether the plaintiff has an adequate remedy at law or will be irreparably harmed if the injunction is not granted; (2) whether the injury threatened to plaintiff outweighs the harm defendant will suffer if the injunction is granted; (3) whether plaintiff has a reasonable likelihood of success on the merits; and (4) whether granting the injunction will disserve the public interest.

*Technical Pub. Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1138 (7th Cir.1984). Judge Posner of the United States Court of Appeals for the Seventh Circuit has summarized and restated the four-factor test in two recent cases: *Roland Machinery v. Dresser Industries*, 749 F.2d 380 (7th Cir. 1984), and *American Hospital Supply Corporation v. Hospital Products Limited*, 780 F.2d 589 (7th Cir.1986). The Court must consider the balance of irreparable

harm in the light of the probability that the plaintiff will succeed on the merits. The rule of *American Hospital Supply* permits a Court to grant a motion for a preliminary injunction only

> if the harm to the plaintiff if the injunction is denied, multiplied by the probability that the denial would be an error (that the plaintiff, in other words, will win at trial), exceeds the harm to the defendant if the injunction is granted, multiplied by the probability that granting the injunction would be an error.

*American Hospital Supply*, 780 F.2d at 593. Any harm the public interest might suffer due to the Court's error is to be added to harm plaintiff or defendant would suffer, as the case may be. *Id.*

### A. *Irreparable Harm to the Plaintiffs*

The plaintiffs will suffer irreparable harm if they are forced to subsist at the income level to which the defendants' rule and policy would reduce them, a level which has been determined by Wisconsin to be 85% of subsistence. This harm is no less irreparable because it is also inflicted on countless other AFDC families who do not have members receiving child support payments or Title II benefits.

Moreover, several of the "other children" will also suffer irreparable harm if they are forced to spend money currently used to pay for the treatment of their special medical and emotional problems on the general subsistence of the family unit. These "other children" are being deprived of their assets without due process of law, without any determination that the money is actually available for redistribution. They are also required to use their own funds to support people, such as their half-siblings, while children similarly situated are not so required, thus denying them equal protection of the laws.

### B. *The Balance of Irreparable Harm*

Irreparable harm to the health and emotional well-being of the children here is substantial. The cost to the defendants of delaying further enforcement of the regulations involved and of temporarily restoring the plaintiffs' AFDC grants to their former level is not substantial and is irreparable only in the sense that such cost will not be reimbursed by plaintiffs. The balance of irreparable harm, then, tilts heavily toward plaintiffs.

### C. *Plaintiffs' Likelihood of Success*

The plaintiffs argue that the administrative regulations implementing § 2640(a) of DEFRA are inconsistent with DEFRA and with other provisions of the Social Security Act and the AFDC program. In the alternative, plaintiffs argue that the law is unconstitutional. Plaintiffs are likely to prevail on the merits. Although the challenged regulations appear to implement Congress' intent, the law itself unconstitutionally deprives the "other children" of their property without due process, denies them equal protection and just compensation, and unconstitutionally conditions these families' receipt of AFDC benefits on a classification which bears no rational relationship to a legitimate legislative objective.

The legislative history, read as a whole, shows that it was Congress' intent to require state authorities administering the AFDC program to include the child support and Title II benefits of co-resident children as available to their AFDC half-siblings. The Court must, therefore, consider the constitutional arguments plaintiffs make against § 2640(a).

█ The Court finds that application of § 2640(a) of DEFRA violates the plaintiffs' Fifth and Fourteenth Amendment rights to due process, just compensation and equal protection.

Each of the plaintiffs is denied due process. Each has a property interest in their AFDC entitlement, child support, Title II benefits, or other property. Yet that property is taken or reduced by the government, and they are given no opportunity, either before or after the taking, to show that the reduction of AFDC benefits pursuant to § 2640(a) creates undue hardship for them.

The threshold question in a due process case is whether the plaintiffs have a constitutionally protected interest in property. The "other children," who have their own money, receive child support or Title II benefits, clearly have such interests. Recipients of public assistance also have a constitutionally protected interest in the continued receipt of those benefits. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Thus, the plaintiff mothers and children who receive AFDC benefits also have property interests of which they cannot be deprived without due process. There are here, moreover, other interests of which the Court is mindful: (1) the interest, or expectation, of fathers making payments pursuant to a court decree requiring them to support their children that the money they pay will be used to satisfy their legal support obligation; (2) the interest, or expectation, of fathers now disabled or deceased that contributions they made to the Social Security Old-Age, Survivor, and Disability Insurance program would entitle their children to Title II benefits in the case of their fathers' death or disability.

The process due to persons possessing property interests such as these is determined by balancing these interests against those of the government in light of the risk of an erroneous deprivation of the plaintiffs' interests through the procedures used and in light of the probable value of any additional procedures in reducing that risk. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This balance tips very sharply in plaintiffs' favor. The preliminary balance of interests, like the balance of irreparable harm considered above, favors the plaintiffs. This becomes starkly apparent in light of the probable reduction in the risk of erroneous deprivation if plaintiffs are provided more procedural protection. Currently no procedure is employed before or after plaintiffs are deprived of their property interests. To deprive the "other children" who reside with AFDC children of their child support payments or Title II benefits which they use for special health needs is one of many

imaginable errors implicit in such processless deprivations. The risk of such errors now is 100%. Even assuming the propriety of replacing part of an AFDC family's benefits with the Title II or child support of any half-siblings who live with that family, plaintiffs are entitled to at least enough process to prevent egregious errors of this kind.

Defendants argue that a pre-deprivation hearing regarding the availability for general family support of the Title II benefits and child support would be impractical because virtually all of the necessary evidence is in the plaintiffs' possession. The Court knows of no reason why plaintiffs may not be required to make a showing of the unavailability of such funds for the general support of the AFDC filing unit. Two families appear to be able to make such a showing here on the basis of the "special" needs of the children receiving child support or Title II benefits. There may well be other reasons why child support or Title II benefits may be shown to be unavailable to supplement a reduced AFDC grant.

■ Moreover, the effect of § 2640(a) is to deprive the "other children," those who receive support payments, Title II benefits, or have other income of their own, of property without just compensation. These "other children," simply because they have the bad luck to live with an AFDC family, are forced to contribute to the support of that family with their own funds, and without compensation. The "other children," who receive child support payments or Title II benefits, are also denied equal protection. If by enacting § 2640(a) Congress intended to deprive those children of their property merely because they live in households with AFDC children, then the "other children" are distinguished for no rational reason from property-owning children who have no AFDC half-siblings. The distinction is irrational because, under Wisconsin law, there is no duty of support running from a minor child to his half-sibling. If there is no one who has both the legal duty and the financial capacity to support a child

the public assumes the burden of that child's support through the AFDC program. Section 2640(a) transfers that burden substantially to those "other children" whose mothers happen to have additional children who are now receiving AFDC benefits. Thus, the child who receives child support or Title II benefits and who has AFDC half-siblings is forced to assume a public burden which the child receiving the same benefits but who has no such half-siblings does not share.

The classification is also overinclusive as can be seen from its likely effect on three of the plaintiff children here, who rely on their child support or Title II income to purchase health care that would otherwise be unavailable. These three children either will be deprived of needed health care or their half-siblings will be required to forego a portion of their subsistence, which is already only 85% of what Wisconsin has determined to be minimum. Congress cannot rationally impose this kind of deprivation on a class of children defined by the indigency of their half-siblings.

Defendants cite *Califano v. Jobst*, 434 U.S. 47, 55, 98 S.Ct. 95, 100, 54 L.Ed.2d 228 (1977), and *Schweiker v. Hogan*, 457 U.S. 569, 589, 102 S.Ct. 2597, 2609, 73 L.Ed.2d 227 (1982), for the proposition that the validity of a broad legislative classification of this sort may not be properly judged by focusing on "selected, atypical examples." But it is difficult to believe that Congress could rationally find that the incidence of special social and health care needs is so low among children who are either Title II or child support recipients as to permit invasion of their property rights and indiscriminate reductions of their subsistence and health care merely because they have half-siblings who receive benefits under the AFDC program.

Defendants contend that the plaintiff children receiving child support or Title II benefits are not, as a legal matter, deprived of anything by § 2640(a). Rather, they argue, § 2640(a) merely limits the family's AFDC grant to an amount that is sufficient, when added to funds available to one family member, to provide the family as a whole with means for its subsistence. At oral argument defendants also suggested that plaintiffs had the additional options of not applying for AFDC benefits or breaking up their households. This is pure sophistry. Those are not real options.

But even were the Court to accept this harsh and formalistic solution to the equal protection rights of children receiving child support and Title II benefits, the equal protection rights of their AFDC half-siblings would remain. AFDC grants to these children are being dramatically reduced simply because there are funds available to their half-siblings, despite the fact that the AFDC children have no legal claim to such funds. AFDC children whose mothers have no "other children" receive full AFDC grants.

### D. *The Public Interest*

The public interest is implicated in a dispute involving welfare and family policies and their impact on the fisc, and the public interest lays clearly on the side of the plaintiffs.

The principal public interest advanced by the government is that the size of the deficit will be reduced if we deprive these "other children" of their property by, in effect, forcing them to share their property with the other impoverished members of their household. The popular consensus is that the public would benefit from a reduction in the deficit, although the individuals that make up the public can't seem to agree whose programs should be cut or abolished to reduce the size of the deficit. Nor is there any clear agreement among economists or politicians that deficits are harmful to the public interest, though that view has certainly emerged as the more popular in recent public discourse, if not in governmental action.

In any event, the question of the effect of deficits upon the public is not before the court, but rather, how a government with the stated purpose of reducing that deficit may act, and what the effect would be on the public interest if this court were to

enjoin the defendants from carrying out the regulations at issue. Assuming the public has an interest in reduced deficits, the court finds that the amounts of money at issue here are, in light of the size of the deficit, *de minimus*, and that the harm to the public and the fisc if plaintiffs prevail is very small.

The public interest will be harmed if the regulations at issue are utilized. Fathers who pay child support, people who have contributed to social security, and people who provide for their children through inheritance of trusts had, or have, the justified expectation that the money intended for their offspring will go to those children, and to those children alone. It does damage to the rightful expectations of these providers, the children, and their mothers for the government to interfere with these property rights.

In addition, the program randomly punishes AFDC children, or reduces their benefits, if they happen to live in a household with "other children" who have some other source of funds. Children who happen to have some other source of income but live with a family on AFDC are similarly punished. The government's suggestion that families in such a situation have the option of breaking up the family or not applying for AFDC reveals the difficult choices that plaintiffs face. The potentially divisive effects of such a plan, dividing child against child, are apparent. It is difficult to see how the public interest in the family would be served by such a system.

Finally, the mark of a civilized society is best reflected in how it treats those in its midst who are the worst off. The public has an interest in providing our nation's children with at least a subsistence level of support.

### ORDER

IT IS HEREBY ORDERED that pursuant to Fed.R.Civ.Pro. 23(c)(1) this action is certified as a class action under Rule 23(b)(2) on behalf of the following class:

(a) All needy dependent children who live with half-siblings receiving Title II or child support payments who have been denied AFDC or whose AFDC benefits have been, are being or will be reduced or terminated because their half-siblings are included in the family's AFDC grant and the Title II or child support payments are considered income available to the entire family;

(b) All children who receive Title II or child support payments who do not need AFDC benefits but live with half-siblings who are needy dependent persons eligible for AFDC; and

(c) All parents or other caretakers of needy dependent children who have within their families children who receive Title II or child support payments and who are being required to apply for AFDC for all children in the household.

IT IS FURTHER ORDERED that the terms of this order will be stayed pending resolution of any appeals.

IT IS FURTHER ORDERED that the defendants Secretary Otis R. Bowen, M.D., and Secretary Linda Reivitz and their agents, employees, successors in office, assistants and all others acting in concert or cooperation with them or at their direction or under their control are preliminarily enjoined from requiring that anyone applying for or receiving AFDC benefits must, as a condition of application for and continued receipt of benefits, include minor children residing in the home who receive Title II or child support payments or have other income.

IT IS FURTHER ORDERED that defendants are preliminarily enjoined from assuming that Title II or child support payments of a child who resides with half-siblings who receive AFDC benefits are available to meet the needs of such AFDC children.

IT IS FURTHER ORDERED that defendants are preliminarily enjoined from requiring that the child support payments of a child be assigned to the State as reim-

bursement for AFDC paid to AFDC children.

IT IS FURTHER ORDERED that defendants are preliminarily enjoined from denying, reducing or terminating AFDC benefits on the basis of defendants' rule and policy promulgated pursuant to § 2640(a) of the Deficit Reduction Act of 1984.

IT IS FURTHER ORDERED that defendants identify and provide notice to all members of the plaintiff class regarding the requirements of this order and the administrative remedies available to them.

IT IS FURTHER ORDERED that defendants notify the directors of the county departments of social services of the requirements of this order.