**Patricia J. SANDFORD and Lewis J. Issac, Appellants,**

v.

**R. L. COLEMAN REALTY COMPANY, INC., Appellee.**

**Patricia J. SANDFORD and Lewis J. Issac, Appellees,**

v.

**R. L. COLEMAN REALTY COMPANY, INC., Appellant.**

Nos. 76–2366 and 76–2367.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 9, 1977.

Decided March 21, 1978.

174

James C. Fuller, Jr., Charlotte, N. C. (James E. Ferguson, II, Chambers, Stein, Ferguson & Becton, Charlotte, N. C., Linda Greene, on brief), for appellants in No. 76–2366, and for appellees in No. 76–2367.

Robert F. Orr, Asheville, N. C. (Harold K. Bennett, Bennett, Kelly & Cagle, Asheville, N. C., on brief), for appellee in No. 76–2366, and for appellant in No. 76–2367.

Before WINTER, RUSSELL and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

These are consolidated appeals involving an action brought by the two plaintiffs charging housing discrimination in violation of § 3612; 42 U.S.C. and §§ 1981 and 1982, 42 U.S.C. By their original complaint they sought injunctive relief and individual actual and punitive damages, along with attorney's fees and costs. Later, they sought to amend their complaint to include a claim for injunctive class action relief, along with their demand for individual relief. This request was denied by the District Court as too late. The cause was then submitted to a jury, which returned a verdict for both actual and punitive damages in favor of the plaintiff Issac but denied recovery to the plaintiff Sandford. Judgment was duly entered pursuant to such verdicts but no injunctive relief was awarded. An attorney's fee was allowed in the Issac case. Issac has appealed the District Court's refusal to certify his action as a class action either prior

to or after judgment, the denial of injunctive relief, and the alleged inadequacy of the allowance of attorney's fees; Sandford appeals the denial of her motion for judgment n.o.v.; the defendant appeals from the judgment entered in the Issac case. We affirm in part and reverse in part.

I

We shall first consider the appeal of the plaintiff Sandford. Her claim of error is directed solely to the denial by the District Court of her motion for judgment n.o.v.[1] This motion was based on the ground that the evidence established conclusively that the plaintiff was denied the rental of an apartment by the defendant because of her race and that the excuses for such denial offered by the defendant in rebuttal of plaintiff's claim were pretensive.[2] There were, however, two fatal flaws in this argument. In the first place, even as the plaintiff herself phrased her cause of action, there were three essential elements of her action, both under the Civil Rights Act of 1866 [§§ 1981 and 1982, 42 U.S.C.] and under the Fair Housing Act of 1968 [42 U.S.C. § 3610(a)]. To quote from the plaintiff's proposed instruction on this point, these three elements, the burden of proving which by the preponderance of the evidence, rested concededly on the plaintiff, are defined as:

"First, that [she] attempted to lease an apartment as described in evidence from the defendant and [was] ready, willing, and able to pay the defendant's rental price.

"Second, that the defendant refused to lease to [plaintiff] or to negotiate for the rental of or otherwise made unavailable or, discouraged or denied an apartment to the [plaintiff].

"Third, one reason for the [defendant's] action was the race of the [plaintiff]." [3]

At most, the plaintiff's motion and the evidence she relied on in support related solely to the second and third elements in her cause of action and omitted any reference to the first element as enunciated by her and in connection with which there was considerable dispute in the evidence. It is obvious then, that, even assuming everything the plaintiff claimed in her motion, her showing was not such as to warrant a judgment n.o.v. in her favor.

The plaintiff apparently recognized this fatal hiatus in her claim to a directed verdict and at oral argument in this Court changed her position on the definition of the first element of her cause of action under the Civil Rights Act of 1866. She now contends in this Court that the District Court erred in requiring her by its jury instructions, given as requested by her, to establish by the preponderance of the evidence that she was "ready, willing and able" to rent the apartment applied for and that on the contrary, it should have ruled that her mere application, whether real or pretensive,—whether in an earnest effort to rent an apartment or merely as an excuse for a suit to test in court the legality of defendant's renting practices,—provided her with standing to maintain an action for a constitutional deprivation under the Civil

1. In her notice of appeal, she phrased her appeal as from "the judgment insofar as it denies all relief to her."

2. The phraseology of the motion was:
"Plaintiff Sandford moves the Court for an order granting to her judgment notwithstanding the verdict of the jury. In support thereof, plaintiff shows the Court that the witness Sandra Wallen testified that in April, when Sandford first applied, she showed the application to another employer, James Looper, and then because of plaintiff's race and defendant's policy, put the application in the file with the other 'colored' applicants. This

testimony was never refuted. Income calculations made by defendant's agents two months later have no effect on Sandford's claim for discrimination in April. This testimony, standing without contradiction, by one of defendant's agents entitled Sandford to judgment."

3. The District Court, in his instructions, modified the third element in this statement of plaintiff's cause of action by changing "one reason" to "the effective reason." To this modification the plaintiff did not except nor has she challenged the modification on this appeal.

Rights Act.[4] The difficulty with this position, now tardily advanced by the plaintiff for the first time in this Court, is that it is directly contrary to that asserted consistently by the plaintiff throughout trial as well as in her post-trial motion before the District Court and actually in her written brief in this Court. At the very outset of her testimony, she disclaimed unequivocally that she was a "tester" or that she rested her right of action on any such role. In both her pre-trial brief and in her requested jury instructions to the District Court, she declared the first element of her cause of action under § 1981-2 to be the establishment by the preponderance of the evidence that she was "ready, willing and able" to rent the requested apartment of the defendant.[5] Obedient to plaintiff's request, the District Court instructed the jury in the exact terms requested by the plaintiff on this point; the plaintiff naturally did not except to such instruction. Later, when at the request of the jury, the District Court reiterated to the jury the elements of plaintiff's cause of action, it included this same definition of the first element in plaintiff's civil rights claim with the concurrence of the plaintiff. Moreover, when she moved for a judgment n.o.v., the plaintiff made no claim of error on the part of the District Court in its declaration of the essential elements of plaintiff's cause of action under the Civil Rights Act. Nor did she press such a claim in the written brief she filed with this Court. Without deciding whether a mere "tester" without any intention of renting has standing to sue for injury under the Civil Rights Act of 1866, we think, that in this case on the basis of plaintiff's own position throughout the proceedings, any claim of alleged error in the ruling or in the jury instruction of the District Court on the first element of a cause of action under the Civil Rights Act of 1866—contradictory as it would be of the very position espoused by the plaintiff herself throughout the trial in the District Court—will not be considered on appeal.[6]

There is, however, another flaw in the argument of the plaintiff. Her motion assumes that the evidence, dealing with the second and third elements of her cause of action, was undisputed and conclusive in her favor, foreclosing jury consideration. But, while we might be inclined to conclude that the evidence in favor of the plaintiff on these particular issues may have been impressive, we cannot say that it was either undisputed or conclusive on the record, sufficient to support a denial of jury submission. The "effective" reason vigorously as-

4. *See, Meyers v. Pennypack Woods Home Ownership Assn.* (3d Cir. 1977) 559 F.2d 894, 898, decided on the issue of standing. Standing, however, is a murky area of the law, where the authoritative polestars often point in contradictory directions. *See,* Kenneth Culp Davis, *Standing,* 72 *Nw. U.L.Rev.* 69 (1977). It is of more than passing interest that, in *Meyers,* the court took a restricted view of standing under the Civil Rights Act of 1866 but an expansive view of standing under the Fair Housing Act of 1968. However, in *Trafficante v. Metropolitan Life Ins.* (1972) 409 U.S. 205 at 212, 93 S.Ct. 364, 34 L.Ed.2d 415, Justices White, Blackmun and Powell, in concurring, took exactly the opposite tack and this same view was later reiterated in *Warth v. Seldin* (1975) 422 U.S. 490 at 512–513, 95 S.Ct. 2197, 45 L.Ed.2d 343.

5. *See* Note 2.

6. *Gibson v. Kroger Company* (7th Cir. 1974) 506 F.2d 647, 653, *cert. denied* 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (EEOC action); *Granite City Steel Company v. Koppers Company, Inc.* (7th Cir. 1969) 419 F.2d 1289, 1290 (a party "may not raise a new theory or radically shift ground on appeal"); *United States v. Gates* (10th Cir. 1967) 376 F.2d 65, 75; *Holm v. American Ship Building Company* (6th Cir. 1960) 276 F.2d 201, 203, *cert. denied* 364 U.S. 819, 81 S.Ct. 53, 5 L.Ed.2d 50.

In *Gates,* the Court said:

"The United States, having led the court to try the case and to charge the jury on the theory that the third sentence of the Regulation is the pertinent and applicable part thereof, may not in this court 'change its hold' and depart from the theory on which it tried the case below and advance a new theory as a basis for a claim of trial error." *Holm* is generally to the same effect:

" 'The theory upon which the case was submitted and argued in the district court cannot, when an adverse judgment results, be discarded and a new, contradictory theory be substituted and successfully invoked on appeal.' " (Quoting from *Corbin v. Baltimore & O. R. Co.* (6th Cir. 1956) 234 F.2d 78, 81.)

serted by the defendant in refusing to rent to the plaintiff, was not her race but her income as given on her application, which, under the defendant's evidence, did not satisfy the formula established by the defendant for determining the financial ability of an applicant to meet the monthly rental payments on the apartment sought for rental [7] and which, according to defendant's testimony, was a significant factor in defendant's determination to rent or not. That there was such an income policy does not appear to be seriously contested. Thus, Sandra Wallin, a former employee of the defendant and a witness called by the plaintiff, testified to such a policy. This policy was indicated by a notation made almost contemporaneously by the witness on the application of Sherri Jewitt, a white tester, who applied the day after the plaintiff Sandford in order to test the good faith of the refusal of the plaintiff's application, that the applicant was rejected because of the inadequacy of her income in relation to the monthly rental of the apartment she sought.

Assuming there was such a policy, however, the critical issue whether that criterion was impartially and uniformly applied was much disputed in the record. In attacking the fair application of the income formula, the plaintiff in her presentation sought to identify whites who had been allegedly accepted as tenants without meeting the formula. This evidence, though, was largely inconclusive. For instance, one of those so identified, it was later conceded, had met the income standard at the apartment complex where she was approved; another, though not qualified on her own income, had a responsible guarantor to bulwark her application and thereby assure her financial responsibility; and explanations

of varying reliability were given for others. The plaintiff, also, proffered certain statistical material which she asserted supported her claim of disparity of treatment between black and white applicants in the application of the income requirement for applicants. The defendant in turn sought to impugn such statistics as subject to heavy and misleading duplications, and it seemed fairly clear that there were such duplications, though the extent of them was not evident. It gave various explanations for at least some, if not all, the alleged variations, explanations which it argued were reasonable. Certain of these explanations related to unsatisfactory credit reports on the applicant, the recency or instability of the applicant's employment, the shortness of the applicant's assignment to the area, etc., all of which the defendant asserted were additional criteria considered significant in assessing the income requirement.

Without reviewing further the conflicting evidence on this aspect of the case, sufficeth that there was credible evidence both in support of the policy and its fair use, and against its impartial use. It is not for us nor was it for the District Court to weigh this evidence or to seek to determine whether the evidence of the plaintiff or the defendant on this point preponderated. That was the function of the jury. The record indisputably warranted the submission of the issues to the jury. It is accordingly plain that the plaintiff was not entitled to a judgment as a matter of law.

## II

The defendant has appealed the verdict in favor of Issac on the ground that the District Court should have directed a verdict in its favor. Contrary to the defend-

---

7. The plaintiff listed her income as $540 per month. Actually, this was almost $400 less than her gross monthly income and $112 less than her net income. The witness Wallin communicated with the plaintiff's employer but was refused any information on plaintiff's earnings. The defendant thus had only the plaintiff's own statement, as set forth on her application, as to her income and this was below the minimum followed generally by the defendant

in its acceptance or rejection of rental applicants.

When Sherri Jewitt, the tester, applied to the defendant for an apartment, she listed her monthly income as $500 and witness Wallin noted on her application that her income was inadequate to support the rental of an apartment such as she sought, which incidentally was substantially the same type apartment the plaintiff had applied for.

ant's contention, the jury found that Issac had shown by the preponderance of the evidence that he had established all the essential elements of a cause of action under the Civil Rights Act of 1866 and the Fair Housing Act of 1968. His testimony, in the view of the jury, was considerably stronger than that adduced by his co-plaintiff. We have already concluded that his co-plaintiff's testimony was sufficient to present a jury issue. Even more so, the evidence in support of Issac's claim manifestly required the submission of his action to the jury. We, accordingly, find no error in its submission, and the money verdict in favor of the plaintiff Issac is affirmed.

### III

■■■ This leaves for consideration Issac's own claim of error. He centers his challenge to the judgment of the District Court on its failure to certify the action as a class action and to grant injunctive relief, as well as an adequate attorney's fee. Under the circumstances of this case, the claims with reference to class certification and denial· of injunctive relief can be considered and disposed of together. In the original complaint, the plaintiffs had sought individual damage relief along with injunctive relief against further maintenance by the defendant of "a policy of discrimination against black people seeking to rent and purchase housing accommodations." Their

amended complaint, with some embellishment, simply enlarged the demands for injunctive relief to include as beneficiaries "the class they represent" and it seems to have been for the purpose of thus enlarging the scope of the injunctive relief that class certification was sought. But it was not necessary either to file an amended complaint or to secure a class certification in order to secure such enlarged injunctive relief, provided, of course, the facts warranted either individual or class injunctive relief. This is so because the settled rule is that "[w]hether plaintiff proceeds as an individual or on a class suit basis, the requested [injunctive] relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack." 7 Wright & Miller, *Federal Practice and Procedure,* § 1771, pp. 663–664 (1972). Since the plaintiffs could receive the same injunctive relief in their individual action as they sought by the filing of their proposed class action,[8] class certification was unnecessary in order to give the plaintiffs the injunctive relief they requested through class certification, assuming the facts of the case were sufficiently flagrant to support that relief. *See, Gray v. International Broth. of Elec. Workers* (D.D.C. 1977) 73 F.R.D. 638, 640–641.[9] The issue of injunctive relief becomes simply whether under the facts the District Court committed clear error in denying injunctive relief.

8. *See, Bailey v. Patterson* (5th Cir. 1963) 323 F.2d 201, 206, *cert. denied* 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609, where the Court in a discrimination case, said that "whether or not appellants may properly represent all Negroes similarly situated, the decree to which they are entitled is the same." This ruling was reaffirmed in *United Farm. of Fla. H. Proj., Inc. v. City of Delray Beach* (5th Cir. 1974) 493 F.2d 799, 812.

9. In *Gray,* the Court said:
   "Insofar as this aspect of the plaintiffs' suit is concerned, then, there exists no need for this case to be certified as a class action. This Court has consistently and emphatically àdhered to the view that when, as here, 'the relief being sought can be fashioned in such a way that it will have the same purpose and effect as a class action,' the certification of a class action is unnecessary and inappropriate. *D. C. Podiatry Society v. District of*

Columbia, 65 F.R.D. 113, 115 (D.D.C.1974); see *Edwards v. Schlesinger,* 377 F.Supp. 1091, 1093 & n. 9 (D.D.C.), *rev'd on other grounds sub nom. Waldie v. Schlesinger,* 166 U.S.App.D.C. 175, 509 F.2d 508 (1974); *Kinsey v. Legg, Mason & Co., Inc.,* 60 F.R.D. 91, 100–01 (D.D.C.1973). This view, although supported by limited (yet prevailing) precedent when first articulated by this Court, [footnote omitted] has now become a wellsettled rule employed by numerous district courts, [footnote omitted] discussed by at least one commentator, [footnote omitted] and recognized by several circuit courts of appeal. [footnote omitted] Accordingly, the Court finds that with respect to the predominant part of plaintiff's prayer seeking declaratory and injunctive relief, '[n]o useful purpose would be served by permitting this case to proceed as a class action.' [citing cases]"

We are of opinion that the facts present a sufficiently clear and flagrant case of discrimination [10] that the District Court committed clear error in failing to grant to Issac injunctive relief against the further maintenance by the defendant of "a policy of discrimination against black people seeking to rent and purchase housing accommodations." The action is accordingly remanded to the District Court for the entry of such injunctive relief in favor of the plaintiff Issac and any other blacks who, in the future, may be denied equal access to housing under the defendant's control. With the entry of such relief, any need for class certification disappears. *Cf., Gore v. Turner* (5th Cir. 1977) 563 F.2d 159, 166.

### IV

■ The allowance of attorney's fees is primarily a matter for the trial court, and its judgment is only to be reversed for abuse of discretion. Were it not for the remand in order to award injunctive relief, we would be inclined to affirm the District Court on its allowance. Since, however, we have found that the plaintiff Issac is entitled to injunctive relief, it is necessary also to remand the award of attorney's fees in order that a reasonable additional allowance may be made on that account. In addition to such allowance as the District Court shall allow for services connected with the grant of injunctive relief, the judgment should include an award of an attorney's fee of $1,250 for the services of the plaintiff Issac's counsel on appeal.

*AFFIRMED IN PART.*

*REVERSED AND REMANDED IN PART.*

10. The flagrant evidence of the defendant's discriminatory practices was provided, for instance, by its undisputed "coding" of any black applicant followed by the denial of his application.