853 F.2d 1532
 11 Fed.R.Serv.3d 1357, 22 Soc.Sec.Rep.Ser. 577,
Unempl.Ins.Rep. CCH 14101A
 Sandra EVERHART, Thomas Everhart, and Myron Zenick, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
Berline Wise and Emil S. Zweizen, Plaintiffs-Intervenors-Appellees,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
and Dorcas Hardy, Commissioner of the Social
Security Administration in their
official capacities,
Defendants-Appellants.
 No. 87-1839.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 12, 1988.
 
 Michael Kimmel (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Robert N. Miller, U.S. Atty., Denver, Colo., and William Kanter with him on the brief), Dept. of Justice, Washington, D.C., for defendants-appellants.
 Linda J. Olson (Daniel M. Taubman, Colorado Coalition of Legal Services Programs, Denver, Colo., and R. Eric Solem with her on the brief), Legal Aid Society of Metropolitan Denver, Denver, Colo., for plaintiffs-appellees.
 Before HOLLOWAY, Chief Judge, TIMBERS* and BALDOCK, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 The primary issue presented in this appeal concerns the methodology employed by the Social Security Administration (SSA) to calculate net overpayments and underpayments of Title II and Title XVI Social Security benefits. Filed as a class action, plaintiffs-appellees' complaint sought declaratory and injunctive relief against defendants-appellants the Secretary of the Department of Health and Human Services (the Secretary) and the Commissioner of the SSA. The plaintiffs challenged the SSA's policy of offsetting underpayments of benefits against overpayments, which they alleged violated their rights under the Social Security Act and denied them due process of law under the fifth amendment to the United States Constitution. The district court entered summary judgment in favor of the plaintiffs, ruling that the netting regulations promulgated by the Secretary are inconsistent with the waiver of recoupment provisions of the Act. The court remanded the named plaintiffs' cases to the SSA and entered a statewide injunction prohibiting the Secretary from applying the regulations to all other Title II and Title XVI beneficiaries.
 
 
 2
 The Secretary now raises the following issues: 1) whether the netting regulations constitute a reasonable exercise of his authority to implement the Social Security Act; and 2) whether the district court erred in granting statewide injunctive relief when it had not made a determination on the question of class certification. We affirm in part and reverse in part.
 
 
 3
 As discussed more fully below, both Title II of the Social Security Act, which controls the operation of the Old Age, Survivors and Disability Insurance (OASDI) programs, and Title XVI, which controls the Supplemental Security Income (SSI) program, contain mandatory provisions calling for the Secretary to make payment of amounts due to underpaid recipients and to recover excess amounts received by overpaid recipients. Both titles also contain waiver of recoupment provisions, pursuant to which the Secretary shall not recover from an overpaid recipient who is without fault when to do so would defeat the purpose of the Act or be against equity and good conscience. The disputed netting regulations establish the methodology by which the SSA determines whether a recipient has been overpaid or underpaid. Pursuant to those regulations, the SSA offsets any overpayments against any underpayments to arrive at a single net amount.
 
 
 4
 The original plaintiffs all received checks for net underpayments. When Sandra and Thomas Everhart were married in September 1984, Sandra was receiving Title II and SSI benefits, while Thomas was receiving SSI benefits. In early 1985, the SSA determined that from their marriage until that time the Everharts together had incurred a net underpayment of $407. Because there was no net overpayment, the SSA considered the statutory recoupment and waiver of recoupment provisions to be inapplicable.
 
 
 5
 Myron Zenick began receiving Title II benefits in 1976. In September 1983, the SSA advised Zenick that his disability benefits were being terminated and that he had been overpaid since 1980. Upon Zenick's reapplication for benefits, an ALJ found that he had been disabled since 1982. In March 1985, the SSA notified Zenick that he would be paid $4,402 for net underpayments accruing during the years 1980 to 1985. Again, the SSA deemed the recoupment and waiver of recoupment procedures to be inapplicable.
 
 
 6
 The intervening plaintiffs both received favorable ALJ waiver decisions which were reversed by the Appeals Council. Berline Wise began receiving Title II disability benefits in 1975. Her benefits were terminated in June 1983; however, she subsequently was awarded old-age benefits as of September 1980. In December 1983, the SSA determined that Wise had received a net overpayment of $14,500 for the years 1976 through 1983. Because she had been overpaid, the SSA provided Wise an opportunity to seek a waiver of recovery of the net overpayment. Wise instead challenged the netting regulations on the basis that her overpayments and underpayments should be treated separately. The ALJ agreed, but the Appeals Council upheld the net overpayment figure and the application of the waiver procedure to that amount. The Appeals Council also found that Wise was at fault in receiving the overpayment and hence did not qualify for a waiver of recoupment.
 
 
 7
 Emil Zweizen began receiving Title II old-age benefits in 1977. The SSA later determined that during the years 1977 through 1984 Zweizen had received a net overpayment of $5,107. An ALJ held that the overpayment should be waived, but the Appeals Council considered Zweizen to be at fault.
 
 
 8
 On December 12, 1986, the original plaintiffs, on behalf of themselves and others similarly situated, filed this action challenging the netting methodology employed by the SSA. The parties stipulated that the netting regulations had been applied to the named plaintiffs and filed cross motions for summary judgment. At a hearing on those motions, the district court ruled from the bench that the regulations contravene the waiver of recoupment provisions of the Social Security Act by denying recipients notice and a hearing on the issue of waiver of recovery of overpayments. Rec. vol. II at 2-5. In so ruling, the court expressly adopted the dissenting opinion in Lugo v. Schweiker, 776 F.2d 1143, 1153-56 (3d Cir.1985) (Gibbons, J., dissenting). Rec. vol. II at 5. Stating that the merits of the case should be appealed "as soon as possible," the court then decided to forego determining whether the class should be certified. Id. at 6-7.
 
 
 9
 In its subsequent order granting the plaintiffs' motion for summary judgment, the court remanded their claims to the Secretary to recalculate their overpayments and underpayments without utilizing the netting methodology and to accord the plaintiffs their procedural rights under the statute. Rec. vol. I, doc. 6 at 2. The court further ordered that the Secretary be "enjoined from applying the above-referenced [netting] methodology to all other beneficiaries under Title II and/or Title XVI of the Social Security Act in the State of Colorado." Id. The statewide injunctive relief was stayed pending this appeal.
 
 I.
 
 10
 The Secretary contends that the regulations employed to determine past payment errors, through the netting of a recipient's entitlements and payments during the entire period during which any payment errors have occurred, constitute a reasonable and permissible construction of the Social Security Act as well as a sound and equitable exercise of his authority to implement the Act.
 
 
 11
 Resolution of this legal issue requires us to determine whether the netting regulations constitute a valid exercise of the Secretary's authority under the statute. Because the Social Security Act expressly entrusts the Secretary with the responsibility of implementing the Act by regulation, our review of the disputed regulations is limited to determining whether the regulations are arbitrary and capricious or are inconsistent with the statute. Heckler v. Campbell, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); Hansen v. Heckler, 783 F.2d 170, 174 (10th Cir.1986).
 
 
 12
 42 U.S.C. Secs. 404(a)(1)[1] and 1383(b)(1)[2] address overpayments and underpayments of Title II and SSI benefits respectively. Both contain language providing that payment shall be made to a beneficiary receiving less than the correct amount and that overpayments shall be recovered from a beneficiary receiving more than the correct amount. The Title II waiver of recoupment provision, Sec. 404(b),[3] qualifies the Secretary's right to recovery or adjustment under Sec. 404(a)(1)(A) by mandating forgiveness of any repayment of overpaid amounts if the recipient is without fault and recovery would defeat the purpose of the statute or would be against equity and good conscience. The SSI waiver provision, Sec. 1383(b)(1)(B),[4] also directs the forgiveness of overpayments in appropriate situations. Those recipients who do not request a waiver of repayment, or who are denied a waiver, are subject to the recoupment provisions set out in Secs. 404(a)(1)(A) and 1383(b)(1)(A).
 
 
 13
 The disputed netting regulations, promulgated by the Secretary to implement the payment error provisions of the Act, establish a general methodology and accounting period for determining whether, and to what extent, a beneficiary has received a net overpayment or a net underpayment. The SSI netting regulation, 20 C.F.R. Sec. 416.538, provides in pertinent part:
 
 
 14
 The amount of an underpayment or overpayment is the difference between the amount paid to a recipient and the amount of payment actually due such recipient for a given period. An overpayment or underpayment period begins with the first month for which there is a difference between the amount paid and the amount actually due for that month. The period ends with the month the initial determination of overpayment or underpayment is made.
 
 
 15
 The regulation applicable to Title II payments, 20 C.F.R. Sec. 404.504, is similarly worded at the outset and is administered in a similar manner. See SSR 81-19a.
 
 
 16
 As described by the Secretary, the payment error regulations are known as the netting regulations because they require a determination of a single payment error through the netting of entitlements and payments during a specified past period when erroneous disbursements are found to have occurred. Once a recipient is found to have received overpayments in some months and underpayments in others, a single determination for the entire period is made of either a net overpayment or a net underpayment. If there is a net underpayment, the Secretary pays the recipient the balance due. If there is a net overpayment, recovery in accordance with the statutory recoupment provisions is applicable, subject to the waiver of recoupment procedures.
 
 
 17
 Contending that the netting regulations are consistent with a permissible and reasonable interpretation of the statute, the Secretary urges this court to follow the decision of the Third Circuit in Lugo v. Schweiker, 776 F.2d 1143 (3d Cir.1985). In Lugo, which involved a virtually identical challenge to the netting regulations, the majority of the panel stated that "[b]ecause Congress decided not to describe explicitly the method for computing erroneous payments," the court was compelled to defer to the Secretary's interpretation of the Act "so long as it [was] reasonable." Id. at 1147. The majority further stated that the Secretary was "entitled to more than mere discretion ... because both Sec. 404(a) and Sec. 1383(b)(1) expressly authorize her to determine whether 'more or less than the correct amount of payment has been made.' " Id. Upon analyzing the statute and the regulatory scheme, the majority concluded, consistent with its deferential approach to the Secretary's interpretation of the statute, that the SSA's decision to net all payment errors and to inform the recipient of the single differential was "reasonable from an administrative point of view, in that SSA can thereby avoid a multitude of confused notices and hearings." Id. at 1148.
 
 
 18
 The dissenting judge disagreed, concluding that "[t]he majority has justified an end run by the Secretary around both the waiver statutes and the Supreme Court's decision in Califano v. Yamasaki, [442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ]." Id. at 1156 (Gibbons, J., dissenting). Judge Gibbons reasoned that in light of the plain language of the waiver of recoupment provisions and the Supreme Court's interpretation of Sec. 404(b), the SSA "may not recover overpayments in any manner until an opportunity has been afforded for a waiver hearing," and thus the netting regulations are inconsistent with the waiver provisions and Supreme Court precedent. Id. at 1155. The crux of Judge Gibbons' conclusion that the regulations are invalid can be found in his statement that "the netting regulations permit the Secretary to accomplish what the waiver provisions plainly and unequivocally forbid; namely a recovery by the United States of overpayments without a hearing on waiver." Id. (footnote omitted).
 
 
 19
 Recently, the Eighth Circuit likewise rejected a challenge to the Title II netting regulation, essentially agreeing with the Third Circuit's conclusion that the methodology employed by the Secretary to offset overpayments against underpayments is neither arbitrary, capricious nor manifestly contrary to Sec. 404(b). Webb v. Bowen, 851 F.2d. 190, 192 (8th Cir.1988). We nevertheless deem the reasoning of the dissenting judge in Lugo to be more persuasive in light of our similar reading of the mandatory language contained in the waiver provisions of the Social Security Act and of the Supreme Court's interpretation of Sec. 404(b) in Califano v. Yamaski, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). While cognizant that we are creating a split between circuits, we decline to follow the Third Circuit's decision in Lugo and the Eighth Circuit's decision in Webb and hold that the Secretary has exceeded his statutory authority in implementing the netting regulations, which are inconsistent with the Act.
 
 
 20
 Our conclusion that the netting regulations are invalid is premised on the inherent conflicts between the regulations and the recoupment and waiver of recoupment provisions of the statute. Although the disputed regulations treat overpayments and underpayments equally in providing the methodology for computing a single net amount, the statute makes a clear differentiation. "The difference in [the statutory] treatment of overpayments and underpayments is quite plain." Lugo v. Schweiker, 776 F.2d at 1154 (Gibbons, J., dissenting). While the provisions relating to underpayments mandate payment without qualification, the recovery of overpayment provisions are qualified by the waiver of recoupment procedures. See id. at 1153-54. The Secretary's netting methodology disregards that differential treatment.
 
 
 21
 More significantly, the Secretary's argument that the regulations constitute a reasonable interpretation of the Social Security Act overlooks the inescapable fact that by offsetting overpayments against underpayments, the SSA has effectively recovered overpayments without complying with the statutorily mandated waiver of recoupment procedures. Consequently, the SSA's employment of the netting methodology results in the deprivation of recipients' rights to notice and a waiver hearing prior to recoupment or adjustment. In Yamaski, the Supreme Court interpreted Sec. 404(b) to require a prerecoupment oral hearing. Califano v. Yamaski, 442 U.S. at 697, 99 S.Ct. at 2555. The Court noted that, in contrast to other federal statutes authorizing the recovery of federal payments which are "entirely permissive," Sec. 404(b) is "mandatory in form," stating that " 'there shall be no' recovery when waiver is proper." Id. at 693-94 n. 9, 99 S.Ct. at 2553-54 n. 9. As succinctly stated by Judge Gibbons, "[n]o recovery means no recovery by setoff, and no recovery by suit; no recovery at all." Lugo v. Schweiker, 776 F.2d at 1154 (Gibbons, J., dissenting) (footnote omitted).
 
 
 22
 The Social Security Act grants the Secretary the power to make rules and regulations and to establish procedures which are not inconsistent with the provisions of the Act. See 42 U.S.C. Secs. 405(a) & 1383(d)(1). The majority in Lugo reasoned that because the statute is silent regarding the methodology for computing payment errors, the Secretary is entitled to reasonably interpret the statute to permit the netting regulations. Lugo v. Schweiker, 776 F.2d at 1147-48. While it is true that the Act does not specify over what past time period there must be a determination of payment errors, the statute is not silent regarding the differential treatment of overpayments and underpayments and the mandatory waiver of recovery in appropriate instances. A setoff such as that undertaken by the Secretary may be an acceptable practice in a business context; however, business entities are not constrained by mandatory statutory provisions. The netting of overpayments against underpayments also may be, as expressed by the majority in Lugo, desirable from an administrative standpoint, but administrative convenience cannot be countenanced when the netting regulations contravene the plain language of the statute.[5]
 
 
 23
 The Secretary further argues that elimination of the netting methodology will transform the payment error rules into a device for beneficiaries to obtain windfall payments. That argument is at least somewhat overstated, in that only those overpaid recipients who first request a waiver, and then meet the waiver requirements, are not compelled to repay the excess benefits they have received. Moreover, an overpaid beneficiary who does not have to repay excess benefits is not receiving a windfall, but rather is benefitting from Congress' express provision that recovery must be waived in appropriate situations. See Lugo v. Schweiker, 776 F.2d at 1155 (Gibbons, J., dissenting).
 
 
 24
 To reiterate, the fundamental flaw in the Secretary's position is his disregard of the fact that by netting underpayments against overpayments, he effectively recovers overpayments without complying with the statutory waiver of recoupment provisions. In contravention of those provisions, the netting methodology enables the Secretary to recover benefits from persons who may qualify for a waiver. Viewing the netting regulations in conjunction with the relevant provisions of the Social Security Act, we must conclude that the regulations are inconsistent with the statute.
 
 II.
 
 25
 The Secretary also asserts that the district court erred in granting statewide injunctive relief when it had not made a class certification determination pursuant to Fed.R.Civ.P. 23. Given the present posture of this case, we agree.
 
 
 26
 After ruling from the bench on the merits of the plaintiffs' challenge to the netting regulations, the court advised the parties that in order to expedite the appeal of its ruling, it would forego a determination on the issue of class certification. Rec. vol. II at 6-7. The court subsequently entered an injunction prohibiting the Secretary from applying the netting regulations to all other Title II and SSA beneficiaries in Colorado. Rec. vol. I, doc. 6 at 2.
 
 
 27
 In arguing that the district court could not grant what is in effect classwide relief, the Secretary relies primarily on Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In Baxter, the Supreme Court noted that in one of the cases the district court had treated the suit as a class action even though the court had not made a class certification within the contemplation of Fed.R.Civ.P. 23. Id. at 310-11 n. 1, 96 S.Ct. at 1554-55 n. 1. The Court stated that "[w]ithout such certification and identification of the class, the action is not properly a class action." Id. (citing Indianapolis School Comm'rs v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975)); see also Zepeda v. INS, 753 F.2d 719, 727-28 (9th Cir.1983); Tape Head Co. v. R C A Corp., 452 F.2d 816, 819-20 (10th Cir.1971) (per curiam).
 
 
 28
 The statewide injunction entered by the district court was tantamount to a grant of classwide relief. Citing a number of cases stating that the determination of whether a suit is to be maintained as a class action is discretionary, e.g., Baum v. Great Western Cities, Inc., of New Mexico, 703 F.2d 1197, 1210 (10th Cir.1983), the plaintiffs argue that the court acted within its discretion in entering a statewide injunction without formally certifying a class.[6] Although the plaintiffs correctly state the law, the cases they cite simply are inapplicable. At this juncture, there has been no determination on the issue of class certification; indeed, the district court expressly declined to do so. Absent a class certification, the district court should not have treated the suit as a class action by granting statewide injunctive relief, Baxter v. Palmigiano, 425 U.S. at 310-11 n. 1, 96 S.Ct. at 1554-55 n. 1, and accordingly should have tailored its injunction "to affect only those persons over [whom] it has power," Zepeda v. INS, 753 F.2d at 727. The primary issue in this appeal is the validity of the netting regulations, the expedited resolution of which the district court desired in deciding to forego ruling on the issue of class certification. The rather unique posture of this case compels us to conclude that the district court acted prematurely in granting classwide injunctive relief.
 
 
 29
 We affirm the district court's ruling invalidating the netting regulations. We reverse the court's entry of a statewide injunction and remand for further proceedings consistent with this opinion. We offer no opinion either on the propriety of a class certification[7] or on the need for a prospective injunction.
 
 
 30
 AFFIRMED IN PART and REVERSED IN PART and REMANDED.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 404(a)(1) provides in pertinent part:
 Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:
 (A) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount ...
 * * *
 (B) With respect to payment to a person of less than the correct amount, the Secretary shall make payment of the balance of the amount due such underpaid person, ...
 
 
 [2]
 42 U.S.C. Sec. 1383(b)(1)(A) provides in pertinent part:
 Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any individual, proper adjustment or recovery shall, subject to the succeeding provisions of this subsection, be made by appropriate adjustments in future payments to such individual or by recovery from such individual or his eligible spouse ... or by payment to such individual or his eligible spouse....
 
 
 [3]
 42 U.S.C. Sec. 404(b) provides:
 In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.
 
 
 [4]
 42 U.S.C. Sec. 1383(b)(1)(B) provides in pertinent part:
 The Secretary (i) shall make such provision as he finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience, ...
 
 
 [5]
 The Secretary argues that elimination of the netting methodology would result in a much more complex system for dealing with payment errors. The majority in Lugo apparently shared that perception, stating that the "SSA's decision to net all errors ... and then inform the claimant of the single differential is reasonable from an administrative point of view, in that SSA can thereby avoid a multitude of confused notices and hearings." Lugo v. Schweiker, 776 F.2d at 1148 (emphasis in original). Countering the Secretary's argument, the plaintiffs state that "[n]owhere do [they] assert that monthly notices or monthly waiver hearings are required, as the Secretary suggests." Brief for the Appellees at 19. They contend that "[i]t is certainly within the Secretary's discretion to provide only one notice" of total overpayments and total underpayments, so long as the two amounts are not netted. Id
 While we are not called upon to determine the time frame to be utilized in calculating amounts of overpayments or underpayments, the plaintiffs' suggestion appears reasonable and comports with our conclusion that overpayments and underpayments must be treated separately. As we perceive the effect of our holding in light of the procedure suggested by the plaintiffs for calculating total overpayments and total underpayments, the Secretary would be under no greater burden to provide notices and hearings than that already imposed under the statute and the Supreme Court's interpretation of the waiver provisions.
 
 
 [6]
 The plaintiffs cite this court's pre-Baxter opinion in Martinez v. Richardson, 472 F.2d 1121 (10th Cir.1973), for the proposition that a classwide injunction can be entered without a class certification for the purpose of insuring future compliance with the court's decision. As expressed by Judge Doyle,
 [A]s we view it, a class action was not demanded here because the same relief could be afforded without its use and seemingly the [district court] had something of this kind in mind when it provided in paragraph 6 of its findings for further enforcement action if the same should become necessary. Thus the court was thinking of future compliance and this was, of course, the important problem.
 Id. at 1127.
 The plaintiffs assert that in the instant case the district court was "concerned that in the absence of an injunction the Secretary would continue to employ his invalid netting regulations to deprive potentially hundreds of Colorado residents of their statutory right to waiver." Brief for the Appellees at 30. The record does not reveal either a statement by the district court to that effect or any indication that the Secretary would continue to utilize the netting methodology in the face of the court's ruling that the regulations were invalid. Consequently, we are unable to agree with the plaintiffs' characterization of the statewide injunction as a necessary measure to guarantee future compliance with the district court's ruling. Further, by entering classwide relief without certifying a class, the court has attempted "to determine the rights of persons not before the court" by extending its contempt power to nonparties. Zepeda v. INS, 753 F.2d at 727.
 We recognize the line of authority indicating that a class certification is unnecessary if all the class members will benefit from an injunction issued on behalf of the named plaintiffs. See, e.g., Gray v. International Broth. of Elect. Workers, 73 F.R.D. 638, 640-41 (D.D.C.1977) and cases cited therein; 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1785.2 (1986). Broad injunctive relief has been upheld where the nature of the rights sought to be vindicated require that the decree run to the benefit of all persons similarly situated. See Zepeda v. INS, 753 F.2d at 733-34 (Norris, J., dissenting); James v. Ball, 613 F.2d 180, 186 (9th Cir.1979), rev'd on other grounds, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); Sandford v. R.L. Coleman Realty Co., 573 F.2d 173, 178 (4th Cir.1978). In Davis v. Smith, 607 F.2d 535, 540 (2d Cir.1978), the Second Circuit agreed with the district court's holding that the prospective effect of its judgment would inure adequately to the benefit of all the proposed class members and that therefore a class certification was not appropriate. As stated by Judge Timbers,
 Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification.
 Id.
 With the exception of Zepeda, which involved the scope of a preliminary injunction, the cases cited above addressed the question of whether the proposed class should be certified; here, the district court made no determination on this issue, and entered classwide injunctive relief prior to ruling on the certification issue. Given the absence of a ruling on the class certification issue, we deem those cases to be inapplicable here.
 
 
 [7]
 While maintaining that the statewide injunction was improper in the absence of a class certification, the Secretary apparently recognizes the possibility that the Fed.R.Civ.P. 23 requirements may be satisfied. "Although this particular case--or the portions of it involving the validity of the Secretary's netting regulations--may have met the class action prerequisites, the district court made no such findings." Brief for the Appellants at 34