888 F.2d 1387
 15 Fed.R.Serv.3d 344
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RAYMOND LEE X, Plaintiff-Appellee,
and
Johnathan Lee X, Nathaniel X, Michael Ansara X; Ulysses X
Pelham, E.C.X. Poarch, Jr., Kevin Scott, Plaintiffs,
v.
James JOHNSON, Ceasar Manrique, Defendants-Appellants,
and
Ed Murray, Edward C. Morris, Sandra Hylton, William George,
Raymond Muncy, Bobby Soles, Jerry Angell, Lloyd Jackson,
Dorothy Cook, Pru Stasikewich, Michael Shupe, George
Rickett, Russ Ford, John I. Austin, Defendants.
 No. 88-6782.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1989.
Decided Oct. 20, 1989.
 
 Robert Harkness Herring, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellants.
 Donald S. Culkin, Third-Year Law Student (Professor George Alfred Rutherglen, Supervising Attorney, University of Virginia School of Law, Post-Conviction Assistance Project, on brief) for appellee.
 Before ERVIN, Chief Judge, and K.K. HALL and WILKINS, Circuit Judges.
 ERVIN, Chief Judge:
 
 
 1
 Several officials of the Virginia Department of Corrections here appeal from an order of the district court which requires the Buckingham Correctional Center ("the prison") to offer Moslem inmates meals which conform to the dietary restrictions of their faith. The prison argues that the relief granted was not required by the First Amendment because the prison cannot reasonably minister to the inmates' religious needs. On the facts before us, particularly the fact that the prison currently provides a special religious diet for another group of inmates, we must reject the prison's argument. While we agree that the inmates are entitled to some reasonable accommodation of their religious beliefs, we vacate the district court's remedial order and remand with instructions to revise that order in accordance with the requirements of Rule 65(d) of the Federal Rules of Civil Procedure.
 
 I.
 
 2
 The appellees (or "inmates") are Moslem followers of the Nation of Islam. Their original complaint, submitted by inmate Johnathan Lee X, pro se, alleged that the prison infringed Moslem inmates' constitutional right of free exercise by refusing to accommodate various requests designed to facilitate the inmates' observance of their religion. The case was initially referred by the district court for trial before a magistrate. After Johnathan Lee X was transferred to another prison and placed in isolated confinement, the magistrate appointed the Post-Conviction Assistance Project of the University of Virginia Law School as counsel.
 
 
 3
 In a Pre-Trial Order issued August 5, 1987, the magistrate distilled the original pro se complaint down to ten issues for trial. Only three of these issues were ultimately decided.[1] In his Report and Recommended Disposition of February 15, 1988, the magistrate rejected the inmates' challenge to a prison prohibition on the wearing of bow ties. He also rejected their claim for compensatory or nominal damages allegedly caused by the prison's decision to cancel previously planned special activities for the observance of the Moslem holiday known as Ramadan in December 1985. The magistrate was persuaded by the evidence, though, that the inmates were entitled to injunctive relief on their claim that the prison was unreasonably refusing to offer meals consistent with their religious beliefs.[2]
 
 
 4
 The magistrate's report was subsequently adopted by the district court. In an order issued by the district court on July 14, 1988, the district court stated "The Defendants shall reasonably accommodate the Muslim dietary requirements." The defendants now appeal from that order.
 
 II.
 
 5
 As both sides in this dispute recognize, the inmates' claims are governed by principles articulated by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987), and O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). In Turner the Court evaluated constitutional challenges to prison regulations limiting inmate to inmate correspondence and forbidding inmates from marrying without the permission of the prison superintendent. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. In adopting this reasonableness standard, the Court rejected a "least restrictive means" analysis formulated by the Eighth Circuit. Id. at 84-89. The Court went on to delineate four factors relevant to the reasonableness inquiry: (1) there must be a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates and the allocation of prison resources generally; and (4) the possibility of obvious or easy alternatives to the challenged restriction. Id. at 89-91.
 
 
 6
 The Court reaffirmed this approach in O'Lone. The O'Lone plaintiffs, Moslem inmates at a New Jersey prison, claimed that new regulations which prevented their attendance at weekly congregational worship services infringed free exercise rights. Applying the reasonableness standard, the Court found that important security concerns justified the regulation, especially since the prison did not foreclose all opportunities for Moslem worship. O'Lone, 482 U.S. at 351-52. The Court specifically noted that prison officials had made other accommodations such as providing for Moslem dietary requirements and special meal times during Ramadan. Id. at 352. The Court also noted that while "the presence or absence of alternative accommodations of prisoners' rights is properly considered a factor in the reasonableness analysis," id. at 349, fn. 1, prison officials are not required "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Id. at 350, quoting Turner, 482 U.S. at 90-91.
 
 
 7
 The prison officials argue that the magistrate erred in this case by applying a least restrictive means analysis rather than the reasonableness standard formulated by the Supreme Court. The magistrate's opinion speaks for itself, though, and demonstrates that he correctly applied the principles articulated in Turner and O'Lone to the facts of this case. His opinion states:
 
 
 8
 [T]he undersigned concludes that plaintiffs have met the burden in establishing that the officials at Buckingham Correctional Center can offer a permanent Ramadan diet with little or no additional administrative burden or cost. As to this issue of reasonable accommodation, the undersigned again notes that certain matters brought to the court's attention after the evidentiary hearing suggest that accommodations have been made for members of the Nation of Islam at the Mecklenburg Correctional Center. As recognized by the Supreme Court in Turner v. Safley, supra, at 4723, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." The undersigned believes that by providing the Ramadan diet to members of the Nation of Islam every December without any undue cost or administrative disruption, the officials at the Buckingham Correctional Center have demonstrated the existence of an easy alternative.
 
 
 9
 Far from applying, as the prison claims, a less restrictive means analysis, the magistrate merely looked to the fact the prison officials had previously provided Moslem diets on a short-term basis and that Moslem diets were provided at other Virginia prisons as factors suggesting that the prison's refusal to provide a Moslem diet year-round was unreasonable.
 
 
 10
 For several years, the prison has provided Moslem inmates with the so-called "Ramadan diet" during the Moslem Holy Month of Ramadan. The prison also provides special diets to Orthodox Jewish inmates and to vegetarians. The magistrate also found that the Ramadan diet could be provided on a year-round basis at a lower per-meal cost than the special Orthodox diet. These facts provide firm and convincing support for the magistrate's determination that the prison could reasonably accommodate the inmates' dietary requests.
 
 
 11
 The prison officials nonetheless argue that these findings are insufficient because the magistrate failed to properly consider several non-economic penological interests which supposedly justify the prison's refusal to provide a Moslem diet year-round. Among the multitude of other concerns, the officials assert that the Ramadan diet is not sufficiently nutritious, that there are no authoritative sources describing the Nation of Islam's dietary beliefs, and that allowing Moslems a special diet will lead to the formation of dangerous "affinity groups" within the prison. This latter rationale is difficult to credit in light of the fact that the prison already provides special diets to Jewish and vegetarian inmates. And since all of the plaintiffs here agreed that the prison's Ramadan diet was consistent with their beliefs, the alleged absence of an authoritative source for the Nation of Islam dietary teachings is a non-issue. Dorothy Cook, the prison dietician, did testify that she was concerned about the nutritional value of the Ramadan diet because it limited inmates to two meals per day. This concern is also a non-issue because the two meal per day restriction is specific to the Ramadan celebration. During other months, Nation of Islam members are allowed to eat three meals a day.
 
 
 12
 The prison officials raise a final challenge which can be dealt with briefly.[3] They allege that they were prejudiced by the magistrate's order allowing the inmates to amend their complaint after the trial. We see no merit in this claim because we fail to see how their cause was adversely affected. The only substantive difference between the issues raised by the amended complaint and the magistrate's pre-trial order was the fact that seven of the ten claims against the officials were dropped.
 
 III.
 
 13
 Rule 65(d) of the Federal Rules of Civil Procedure states, "Every order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." As noted above, the district court's order merely stated, "The Defendants shall reasonably accommodate the Muslim dietary requirements." We think the language of the district court's order fails to meet the requirements of Rule 65(d). The order is especially troublesome because the record discloses some confusion over what foods and cooking methods are and are not acceptable under the Nation of Islam's teachings. We therefore vacate that portion of the district court's order and remand with instructions to enter an order in conformance with the requirements of Rule 65(d).
 
 
 14
 We do not here suggest that Rule 65(d) requires the district court to engage in the task of developing Moslem meal plans for the prison. But the final order must be sufficiently specific to allow prison officials to discern what dietary prescriptions or proscriptions, as the case may be, must be adhered to in order to comply with the order. See Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood").
 
 IV.
 
 15
 Accordingly, the district court's decision that prison officials at the Buckingham Correctional Center may not reasonably refuse to provide a Moslem diet is affirmed. The district court's injunctive order, however, is vacated and the case remanded with instructions for the entry of a more specific order.
 
 
 16
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 By way of an amended complaint submitted by appointed counsel after trial but before the case was decided, the inmates abandoned seven of the claims identified in the Pre-Trial Order
 
 
 [2]
 Members of the Nation of Islam sect of the Moslem religion follow the teachings of Elijah Muhammad. The sect's dietary principles, derived from Elijah Muhammad's book How to Eat to Live, include proscriptions against eating, among other things, pork, shellfish, nuts, and various vegetables. During the Holy Month of Ramadan, many other restrictions, such as a prohibition on eating between sunrise and sunset, apply
 
 
 [3]
 Since our decision today vacates the order of which the officials complain, it is not necessary for us to decide the officials' claim that the relief granted effectively transformed this action into a class action even though no class was ever certified. The officials argue that this is so because the relief granted applies to all Moslem inmates and not just the named plaintiffs. This argument would appear mistaken in that the district court's order was directed to prison officials rather than inmates. We note that "the settled rule is that '[w]hether plaintiff proceeds as an individual or on a class suit basis, the requested [injunctive] relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack.' " Sandford v. R.L. Coleman Realty Co., Inc., 573 F.2d 173, 178 (4th Cir.1978), quoting 7 Wright & Miller, Federal Practice and Procedure, Sec. 1771, pp. 663-664 (1972) (brackets in original)